659 P.2d 1258

THREE PHOENIX COMPANY,
Plaintiff-Appellant,

v.

PACE INDUSTRIES, INC.,
Defendant-Appellee.

No. 15775–PR.

Supreme Court of Arizona,
En Banc.

Jan. 12, 1983.
Rehearing Denied March 1, 1983.

**114**

Kenneth A. Winsberg, Cruse, Meadow & Firetag by Stephen T. Meadow, Phoenix, and William W. Webb and Jonathan Rose, Tempe, for plaintiff-appellant.

Brian K. Stanley, Kenneth R. Reed, Phoenix, for defendant-appellee.

HOLOHAN, Chief Justice.

Respondent, Three Phoenix Company, initiated this litigation seeking injunctive and other relief based upon an alleged breach of covenants not to compete by the petitioner, Pace Industries, Inc. Pace moved to dismiss on the grounds that the respondent was not the proper party to enforce the covenants and that the covenants were unenforceable in any event. The trial court treated the motion as one for summary judgment, considered affidavits submitted by respondent, and granted judgment to petitioner Pace.

Three Phoenix appealed. The Court of Appeals reversed the trial court's judgment. *Three Phoenix Co. v. Pace Industries, Inc.,* 135 Ariz. 126, 659 P.2d 1271 (1981). We granted the petition of Pace for review. The opinion of the Court of Appeals is vacated.

The essential facts are that Wabash Computer Corporation (Wabash) sought to divest itself of a portion of its computer business. Wabash accomplished the divestiture by selling its single-disc tester business to Three Phoenix and by selling the pack-scan tester business to Pace. Wabash and Three Phoenix entered a written agreement in June 1973. Pace and Wabash entered a written agreement in October, 1973, although it appears that there was an oral agreement prior to that time.

The written agreement between Pace and Wabash contained two covenants which in essence provided that Pace would not compete with Three Phoenix. These covenants stated:

9. *Non-Competition.* BUYER shall not during the term of this agreement within the world manufacture, use, lease, sell or otherwise dispose of any equipment or inventions which would directly or indirectly perform the same operations as said INVENTIONS or be in competition therewith nor shall BUYER for a period of two (2) years or for so long as they manufacture or sell said INVENTIONS, whichever period is longer, design, manufacture or sell any other equipment or products which were heretofore designed, manufactured or sold by the SELLER INCLUDING THE # SSA AND # SDT FOR THE WINCHESTER DISC which SELLER intended to design, manufacture or sell.

10. *Non-Competition with Three Phoenix Company.* SELLER has sold the following product lines to Three Phoenix Company, an Arizona corporation: the certification equipment, disc memo and TCT–300. BUYER shall not in any way compete with Three Phoenix in said product lines and shall not engage in any business activity with respect to them, including without limitation consulting services, maintenance or the supplying of spare parts.

The trial court found that the covenants at issue were unenforceable because they failed to include any time limit, and the trial court also ruled that the covenants violated the antitrust laws. We believe that it is only necessary for us to address the antitrust issue.

Three Phoenix brought this action to enforce the covenants. We have no difficulty in holding that, if legally enforceable, Three Phoenix as a third party beneficiary could enforce the covenants.

The issues to be resolved are:

1. Did the restrictive covenants contained in the Pace-Wabash agreement constitute a horizontal market division scheme or were they ancillary to an otherwise legitimate transaction?

2. If the restraints were ancillary to a valid transaction, were they reasonable?

Three Phoenix sought to enforce the covenants, claiming they are ancillary to an otherwise valid transaction (namely, Wabash's sale of its disc-testing technology). If the covenants are in fact ancillary restraints, they will be scrutinized under the so-called rule of reason and enforced if "reasonable."

Conversely, Pace asserts, *inter alia,* that the restrictive covenants constitute a market division scheme between competing firms. As such, the covenants are naked restraints of trade which state and federal antitrust statutes prohibit. Under this view, the rule of *per se* illegality would apply to invalidate the covenants.

The language of the Sherman Act, 15 U.S.C.A. § 1 (and its Arizona counterpart, 14 A.R.S. § 44–1402) paints with a very broad brush, making illegal *every* contract, combination, or conspiracy in restraint of trade. Taken literally, this language would outlaw virtually every commercial contract, since each time a buyer elects to deal with a particular seller the contract limits the freedom of both to deal with others. Consequently, the courts found it necessary to interpret the statutory language in a somewhat looser fashion. L. Sullivan, Handbook of the Law of Antitrust, § 63 (1977). Thus, the U.S. Supreme Court adopted the more flexible "rule of reason" for determining whether most business relationships violate the prohibitions of the Sherman Act. *United States v. Topco Associates, Inc.,* 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972); *Standard Oil Co. v. United States,* 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911).

Rule of reason analysis considers "the facts peculiar to the business in which the restraint is applied, the nature of the restraint and the reasons for its adoption." (*i.e.,* purpose, power and effect). *Chicago Board of Trade v. United States,* 246 U.S. 231, 38 S.Ct. 242, 62 L.Ed. 683 (1918).

While the Supreme Court applies this approach to most restraints, over time it has delineated certain categories of business activity which are *per se* violative of antitrust law. With respect to these activities, the conclusion of illegality is reached without conducting the *extensive* inquiry into "purpose, power and effect" required under rule of reason analysis. *United States v. Topco Associates, Inc., supra; Wedgewood Investment Corp. v. International Harvester Company,* 126 Ariz. 157, 613 P.2d 620 (App.1980).

One such category of *per se* violations is the horizontal market division, *i.e.,* a market division scheme between two or more firms which otherwise would be competitors. Prior to the U.S. Supreme Court's decision in the *Topco* case, there was some dispute as to whether horizontal market division agreements were *per se* illegal, in the absence of other Sherman Act violations such as price fixing. *See United States v. Topco Associates, Inc., supra,* 405 U.S. 596 at 613–19, 92 S.Ct. 1126 at 1136–39, 31 L.Ed.2d 515 at 529–533, (Burger, C.J. dissenting), discussing *Serta Associates, Inc. v. United States,* 393 U.S. 534, 89 S.Ct. 870, 21 L.Ed.2d 753 (1969), *aff'g* 296 F.Supp. 1121 (N.D.Ill.1968); *United States v. Arnold, Schwinn & Co.,* 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967); *United States v. Sealy, Inc.,* 388 U.S. 350, 87 S.Ct. 1847, 18 L.Ed.2d 1238 (1967); *Northern Pacific Ry. Co. v. United States,* 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958); *Timken Roller Bearing Co. v. United States,* 341 U.S. 593, 71 S.Ct. 971, 95 L.Ed. 1199 (1951); *United States v. National Lead Co.,* 332 U.S. 319, 67 S.Ct. 1634, 91 L.Ed. 2077 (1947); *United States v. Addyston Pipe & Steel Co.,* 85 F. 271 (6th Cir.1898), *aff'd* 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136 (1899).

*Topco* removed any doubts in this regard, however. In an expansively worded majority opinion, Justice Marshall stated:

> One of the classic examples of a *per se* violation of § 1 is an agreement between competitors at the same level of the market structure to allocate territories in order to minimize competition. Such concerted action is usually termed a "horizontal" restraint, in contradistinction to combinations of persons at different levels of the market structure, *e.g.,* manufacturers and distributors, which are termed "vertical" restraints. This court has reiterated time and time again that "[h]orizontal territorial limitations . . . are naked restraints of trade with no purpose except stifling of competition." . . . Such limitations are *per se* violations of the Sherman Act. (citations omitted).

*United States v. Topco Associates, Inc.,* supra, 405 U.S. at 608, 92 S.Ct. at 1133–34, 31 L.Ed.2d at 525.

Although *Topco* dealt with a horizontal market division along territorial lines, and the market division in this case is along product lines, the courts and commentators have not been willing to make any distinctions between the two types of market division.* Both are illegal.

Their reasoning is sound in that the adverse effect on competition is the same whether the division is along territorial or along product lines.

> [F]orms of market division can vary to an almost capricious degree. Collision with competitors can be avoided by agreements which parcel out exclusive territories, exclusive customers, or exclusive products, but all of this has long been assimilated and the law has displayed no tendency to draw overly fine distinctions between such alternative ways of dividing markets. . . . Whether we call such devices imaginative or crude, once they

have been found out they do nothing to drape over the fact that firms which might have given each other the competitive nudge have instead agreed to permit each other an abundant elbow room. L. SULLIVAN, supra, § 79, at 213.

■ A covenant not to compete ancillary to an agreement for the sale of a business or a transfer of business property will be enforced, if the restraint imposed is no greater than necessary to afford fair protection to the parties, and if the restraint is partial in nature and reasonably limited in scope.

The classic covenant not to compete incident to the sale of a business is one restricting the *seller's* right to compete in order to effectuate a transfer of the good will associated with the tangible assets sold. The rationale for upholding such covenants appears in *United States v. Addyston Pipe & Steel Co.,* 85 F. 271, 280–81 (6th Cir.1898), written by Judge (later Justice) Taft:

> It was of importance, as an incentive to industry and honest dealing in trade, that, after a man had built up a business with an extensive good will, he should be able to sell his business and good will to the best advantage, and he could not do so unless he could bind himself by an enforceable contract not to engage in the same business in such a way as to prevent injury to that which he was about to sell.
>
> \* \* \* \* \* \*
>
> 'Many . . . partial restraints on trade are perfectly consistent with public convenience and the general interest, and have been supported. Such is the case of the disposing of a shop in a particular place, with a contract on the part of the vendor not to carry on a trade in the same place. It is, in effect, the sale of a good will, and offers an encouragement to trade by allowing a party to dispose of

---

\* *See, e.g.,* L. Sullivan, *supra,* §§ 81, 82; *Citizen Publishing Co. v. United States,* 394 U.S. 131, 89 S.Ct. 927, 22 L.Ed.2d 148 (1969); *Hartford-Empire Co. v. United States,* 323 U.S. 386, 65 S.Ct. 373, 89 L.Ed. 322 (1945); *United States v. Consolidated Laundries Corp.,* 291 F.2d 563 (2d Cir.1961); *Las Vegas Merchant Plumbers*

*Ass'n. v. United States,* 210 F.2d 732 (9th Cir. 1954), *cert. denied* 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645, *reh. denied,* 348 U.S. 889, 75 S.Ct. 202, 99 L.Ed. 698 (1954); *United States v. Grinnell Corp.,* 236 F.Supp. 244 (D.R.I.1964), *aff'd* in part and *rev'd* in part on other grounds, 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966).

all the fruits of his industry.' (citation omitted).

Thus, even though an ancillary covenant may produce some division of the markets served, society's interest in promoting the free transferability of business assets is sufficient to justify a rule of reason approach in these circumstances.

If we characterize the covenants in the Pace-Wabash transaction as a horizontal market division, it is difficult to avoid the conclusion that these agreements are *per se* antitrust violations and, therefore, unenforceable. On the other hand, if the covenants come under the ancillary restraints doctrine, they will be scrutinized under the rule of reason.

In either case, the inquiry begins with an examination of the purpose of the restrictive covenants as well as their probable effect. Even in *per se* analysis, purpose and effect must be examined initially in order to determine that a particular type of behavior falls within its ambit. While a flat-out market division agreement is subject to the *per se* rule, its applicability is less certain where an arrangement only *tends* to work a market division. *See generally*, L. Sullivan, § 81.

Given the facts of this case, the covenants in question had the effect of dividing the market between two competitors or, at least, potential competitors. Although the firms were not necessarily competitors at the time of their respective acquisitions, the potential for competition between them existed. Antitrust law reaches agreements not to compete involving potential as well as actual competitors. *Otter Tail Power Co. v. United States,* 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973). Therefore, it is undisputed that Pace and Three Phoenix stood in a horizontal relationship to each other.

In addition, Three Phoenix's argument that the deal actually fostered competition is mistaken. Admittedly, as a result of the transaction there were two entities (Three Phoenix and Pace) where previously there had been only one (Wabash). Nevertheless the challenged covenants (if enforceable) would effectively preclude all competition between the successor firms. Thus, the transaction as Three Phoenix perceives it, actually would have the effect of stifling potential competition, rather than promoting it. It seems equally clear from the scope of the covenants that the intended purpose was to do precisely that. They purport to prohibit Pace from competing by any means in designated areas of commerce and forbid Pace's manufacture or sale of certain classes of products. Thus, even if Pace, by its own initiative and without the use of anything acquired from Wabash, developed the technology to compete with Three Phoenix, the covenants would bar the competition as well.

Three Phoenix attempts to avoid the *per se* classification by claiming the covenants were ancillary to the sale of a business. A legitimate ancillary restraint is one which is subordinate to (and essential to attainment of) the main lawful purpose of the transaction. The mere fact that the covenants accompanied the sale of a business does not automatically place them in the ancillary restraint category. *See generally, United States v. Addyston Pipe and Steel Co.,* 85 F. 271 (6th Cir.1898); Restatement (Second) of Contracts §§ 187, 188 and comments (1981); R. Bork, The Antitrust Paradox at 27 (1978).

To gain ancillary status, the covenants in question must be deemed necessary to effectuate Wabash's divestiture of its computer disc-testing operations. Under this doctrine, the buyer must acquire or the seller must retain an interest which can be protected via the restrictive covenant. In either the buyer-protection or seller-protection situation, the covenant is a necessary incident of the underlying sales transaction. Often the seller of a going concern cannot effectively alienate the intangible property which he has accumulated (in the form of good will) unless his buyer can have a valid, contractual assurance that the seller·will not immediately set himself up in competition with the business he just sold. Likewise, the seller may extract from his buyer

a promise not to use the assets or technology sold to compete with the seller in the seller's remaining business operations.

■ Here Wabash (the seller) sought to bind Pace (one buyer) not to compete with Three Phoenix (another buyer). Wabash retained no interest capable of being protected by the covenant with Pace. While Three Phoenix (as a buyer) may have been able to prevent Wabash (as the seller) from competing with it in the single-disc testing business, it could not extract such a promise from Wabash's other purchaser.

The restrictive covenants here were necessary to the sale transaction only in the sense that Three Phoenix had the bargaining power to veto the entire deal if it was unable to obtain the sought-after concessions. This type of necessity is insufficient to invoke the doctrine of ancillary restraints. To find otherwise would enable any entity with sufficient bargaining power to effectively circumvent the antitrust laws by refusing to deal unless the offensive conduct were incorporated into the transaction.

Three Phoenix further argues that a seller should be permitted to dispose of his business under the most favorable or perhaps the only terms he is able to negotiate. While it may be true that a seller is entitled to strike the best bargain he can, that bargain may not be unlawful. Any business transaction is enhanced substantially by the seller's assurances against competition from a rival firm. This is not enough to change an otherwise unlawful trade restraint into "legitimate" ancillary covenants. The offensive conduct is no less so merely because the potential rivals acquire their interests from the same seller as part of the same or related transactions or because one party refuses to deal unless it can secure an assurance against competition.

Nor can the covenants be justified by the claim that they were necessary to make the single disc-testing business a viable one, *viz,* one better able to compete. Any business would be a more effective competitor with the guaranteed elimination of a potential rival.

A similar justification was discredited in the *Topco* case. There the district court found the association's limitation on competition between its individual members was doing a greater good by enabling association members to compete more effectively with other large supermarket chains. The U.S. Supreme Court disagreed, however, stating:

> . . . the fallacy in this is that Topco has no authority under the Sherman Act to determine the respective values of competition in various sectors of the economy. On the contrary, the Sherman Act gives to *each Topco member* and to *each prospective member* the right to ascertain for itself whether or not competition with other supermarket chains is more desirable than competition in the sale of Topco brand products. Without territorial restrictions, Topco members may indeed "[cut] each other's throats." (citation omitted). But we have never found this possibility sufficient to warrant condoning horizontal restraints of trade. (emphasis added).

*United States v. Topco Associates, Inc., supra* 405 U.S. at 610–611, 92 S.Ct. at 1135, 31 L.Ed.2d at 527.

As the *Topco* court noted, the decision to sacrifice competition in one segment of the economy for greater competition in another segment is a matter for the legislature and not for "private forces" or for the courts. *Id.*

The covenants were not necessary to effect or to give shape to the underlying sale transaction. Rather, the covenants were part of a general scheme to dispose of Wabash's business by carving out separate market preserves for each of the two successor entities. The most compelling evidence of the real purpose of these covenants is their breadth. They foreclose Pace's competition with Three Phoenix in all areas, not only in those areas involving the technology acquired from Wabash.

From the foregoing, it is clear the *per se* rule against horizontal market division, and not the rule of reason, applicable to cove-

nants ancillary to the sale of a business, is appropriate here.

Even assuming the covenants were ancillary to Wabash's sale of its computer disc-testing business, the result would be the same. Under the rule of reason if either the purpose or effect of a practice is sufficiently adverse to competition to outweigh any benefits, the conduct may be deemed unreasonable. L. SULLIVAN, *supra,* § 71. Applying the rule of reason, the covenants at issue would be found unreasonable as a matter of law because their restrictions far exceed any measures necessary to protect the interests transferred in the trilateral sale. Accordingly, the covenants may not be enforced.

The judgment of the superior court is affirmed.

GORDON, V.C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.