748 F.2d 1363
 1985 A.M.C. 1107
 Samuel K. HALUAPO, Plaintiff-Appellant,
v.
AKASHI KAIUN, K.K., S.A.M., Inc., International Shipping
Co., Diamond Marine Company, S.A., Kabushiki
Kaisha Hoketsu Bussan, and Ishida
Industry Company, Ltd., Defendants,
Shinto Shipping, Ltd., Defendant-Appellee.
 C.A. No. 84-3668.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 7, 1984.
Decided Dec. 6, 1984.
 
 Charles Robinowitz, Portland, Or., for plaintiff-appellant.
 Katherine H. O'Neil, Wood, Tatum, Mosser, Brooke & Holden, Portland, Or., for defendant-appellee.
 Appeal from the United States District Court for the District of Oregon.
 Before SKOPIL, FARRIS and BEEZER, Circuit Judges.
 BEEZER, Circuit Judge:
 
 
 1
 Longshoreman Samuel K. Haluapo brought this negligence action against the owners and charterers of the vessel Eastern Hope and their agents. Haluapo managed to serve process upon Shinto Shipping, Ltd., which had time chartered the vessel, and upon several agents of the various charterers. The district court granted Shinto Shipping's motion for a summary judgment and dismissed Haluapo's claims against the agents. Haluapo appeals from the summary judgment in favor of Shinto Shipping. We affirm.
 
 
 2
 * FACTS AND PROCEEDINGS BELOW
 
 
 3
 This appeal turns on the relationship between the various parties who have an interest in the vessel Eastern Hope. As is common in maritime trade, the transactions in this case are a series of charters, which are governed by documents known as "charter parties." See generally G. Gilmore & C. Black, The Law of Admiralty Sec. 4-1 (2d ed. 1975). The owner of the Eastern Hope is Kabushiki Kaisha Hoketsu Bussan ("the Owner"), which is not presently a party to this litigation. The Owner chartered the vessel to Ace Maritime Company Ltd. ("Ace"), which in turn chartered the ship to Diamond Marine Company ("the Bareboat Charterer"). Both charters were "bareboat" or "demise" charters, which have the effect of making the charterer an owner pro hac vice. The Bareboat Charterer executed a time charter for five years to Shinto Shipping, Ltd. ("the Time Charterer"). This gave the Time Charterer the power to direct the commercial activities of the vessel, but not its operation. The Time Charterer executed a voyage charter to Ishida Industry Co., Ltd. ("the Voyage Charterer"). This gave the Voyage Charterer the power to designate one particular voyage for the vessel. Pursuant to the voyage charter, the Eastern Hope arrived at Longview, Washington, to receive a shipment of logs. The master and crew of the Eastern Hope were employed by the Bareboat Charterer. The stevedoring company that employed Haluapo was hired by the Voyage Charterer.
 
 
 4
 On July 10, 1980, Haluapo was injured while unloading the Eastern Hope. Haluapo alleges that his injuries were caused by a defective winch on board the vessel. The record reveals that the crew of the Eastern Hope knew that the winch was defective.
 
 
 5
 Haluapo initially filed suit against Akashi Kaiun, K.K. Although he obtained a default judgment against that company, Akashi Kaiun, K.K. evidently has no connection to the Eastern Hope. Haluapo added several defendants in his first and second amended complaints. All of the defendants other than the Time Charterer either could not be served with process or received dismissals. The district court granted the Time Charterer's motion for summary judgment, from which Haluapo appeals.
 
 II
 ANALYSIS
 
 6
 The granting of a summary judgment is reviewable de novo. Lone Ranger Television, Inc. v. Program Radio Corp., 740 F.2d 718, 720 (9th Cir.1984).
 
 
 7
 Haluapo contends that the district court erred by finding that the Time Charterer did not have a duty to maintain the winches. Haluapo relies upon our decision in Turner v. Japan Lines, Ltd., 651 F.2d 1300 (9th Cir.1981), cert. denied, 459 U.S. 967, 103 S.Ct. 294, 74 L.Ed.2d 278 (1982), in which we held that a time charterer was liable to a longshoreman for the negligent acts of a foreign stevedore hired by the time charterer. Turner is distinguishable on two grounds. First, the time charterer in Turner actually hired the foreign stevedore. This fact allowed the court to find that the time charterer could "ensure safety by choosing a reliable foreign stevedore [and] supervising its work when necessary." 651 F.2d at 1304. In this case, the Voyage Charterer hired the stevedore and arranged the loading operations. Second, the time charterer in Turner actually had control of the vessel. The court specifically found that the master of the vessel was an agent of the time charterer. Id. at 1305-06. The affidavits accompanying the Time Charterer's motion for summary judgment establish that the master was not an agent of the Time Charterer at the time in question. Haluapo filed no opposing affidavits. Thus, unlike the time charterer in Turner, the Time Charterer had no right or ability to control the actions of the crew members.[1] See Continental Oil Co. v. Bonanza Corp., 706 F.2d 1365, 1374 n. 12 (5th Cir.1983) (noting that "a time charterer would not incur liability for the acts of the master who was not his employee").
 
 
 8
 There is no doubt that Haluapo could bring an action for negligence against the Bareboat Charterer, which was owner pro hac vice and the employer of the crew. See G. Gilmore & C. Black, supra, Sec. 4-23. Haluapo might have a cause of action against the Voyage Charterer, which employed the stevedoring company and owned the cargo. Cf. Turner, 651 F.2d at 1303-04 (holding a time charterer liable when the time charterer had employed the stevedore whose negligence caused the injury). The Time Charterer, however, had no involvement in the operation of the vessel or the loading of the cargo other than providing pilotage and tugboat service and arranging for the berthing of the vessel. The Time Charterer had neither knowledge of the defects on board the ship nor the ability to control the actions of the crew. Accordingly, there is absolutely no basis for imposing tort liability upon the Time Charterer. See Hasbro Industries, Inc. v. M/S "St. Constantine", 705 F.2d 339, 342-43 (9th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983).[2]
 
 III
 CONCLUSION
 
 9
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 It would be possible to interpret the time charter as creating an agency relationship between the Time Charterer and the master of the vessel. The interpretation of the time charter presents a mixed question of law and fact. See Marchese v. Shearson Hayden Stone, Inc., 734 F.2d 414, 417 (9th Cir.1984). The Time Charterer's uncontradicted affidavits establish that the time charter did not create an agency relationship. Accordingly, the existence of the time charter did not raise a genuine issue of material fact regarding the Time Charterer's ability to control the crew
 
 
 [2]
 Haluapo argues that the "vessel" is liable to him and that it is not his responsibility to determine which party must bear the ultimate cost of his injuries. See 33 U.S.C. Sec. 902(21) (defining "vessel" for purposes of the Longshoremen's and Harbor Workers' Compensation Act). While it is possible that the Time Charterer has a duty to indemnify the Voyage Charterer or the Bareboat Charterer, Haluapo cannot sue the Time Charterer on the basis of the Time Charterer's duty to indemnify a nonparty. To sustain a claim against the Time Charterer, Haluapo must show that the Time Charterer was negligent