PACE INDUSTRIES, INC., an Arizona Corp., Plaintiff-Appellant,

v.

THREE PHOENIX CO., an Arizona corp., Wabash Computer Corp., a Delaware corp., Donald E. Oglesby, husband, and Beverly Oglesby, wife, Defendants-Appellees.

No. 85–1754.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 1986.

Decided March 24, 1987.

Brian K. Stanley, Phoenix, Ariz., for plaintiff-appellant.

Andrew S. Gordon, Robert C. Houser, Casceil C. Medlin, Phoenix, Ariz., for defendants-appellees.

Before BROWNING, TANG and BEEZER, Circuit Judges.

TANG, Circuit Judge:

Pace Industries, Inc. ("Pace") appeals from a grant of summary judgment for Three Phoenix Co. ("Three Phoenix"), Donald Oglesby ("Oglesby") and Beverly Oglesby, and Wabash Computer Corporation ("Wabash") on Pace's antitrust action for treble damages under 15 U.S.C. § 15. The district court held that the action was barred by the four-year statute of limitations. We affirm.

## FACTS

Appellee Wabash manufactured and sold two lines of disc testing equipment: single disc testers and multiple disc testers. In 1973, Wabash sold its single disc tester line to appellee Three Phoenix, and its multiple disc tester line to Pace. The contract of sale between Wabash and Pace contained a covenant wherein Pace agreed not to compete with Three Phoenix in the manufacture and sale of single disc testing equipment. Three Phoenix was not a signatory

to the Wabash/Pace Contract, but is a third party beneficiary.

Appellee Donald Oglesby founded Three Phoenix in 1973 and was its original president. Before the founding of Three Phoenix, Oglesby was the Vice President and General Manager of Wabash.

In 1978, Pace prepared to market single disc testing equipment. Single disc testing equipment is a machine designed for testing the quality of a single disc surface or the two surfaces of a single disc. Three Phoenix filed a state court injunction and accounting action to enforce the restrictive covenant in the Wabash/Pace contract as a third-party beneficiary. In its defense, Pace filed a motion to dismiss, and argued that the restrictive covenant was unenforceable because it violates federal and state antitrust laws. Pace prevailed in superior court. Three Phoenix then appealed the decision to the Arizona Court of Appeals which reversed in 1981. *Three Phoenix Co. v. Pace Industries*, 135 Ariz. 126, 659 P.2d 1271 (1981), *vacated*, 135 Ariz. 113, 659 P.2d 1258 (1983) (en banc). The Arizona Court of Appeals in turn was reversed in 1983 by the Arizona Supreme Court which ruled that the restrictive covenant constituted a per se violation of the Sherman Act. *Three Phoenix Co. v. Pace Industries, Inc.*, 135 Ariz. 113, 659 P.2d 1258 (1983) (en banc).

Wabash was not a party to the state court suit. Three Phoenix acted to enforce its own rights, and the Arizona Supreme Court ruled "Wabash retained no interest capable of being protected by the covenant with Pace." *Id.*, 135 Ariz. at 118, 659 P.2d at 1263.

On May 3, 1983, four months after the Arizona Supreme Court decision, Pace filed this treble damages action under 15 U.S.C. § 15 in United States District Court. Pace alleged Sherman Act and Arizona Antitrust Act violations by the defendants contracting, combining and conspiring to prevent it

from entering the single disc testing equipment market as a manufacturer and/or distributor of such equipment. Wabash and Three Phoenix moved for summary judgment, asserting that Pace's claim was barred by the applicable four-year statute of limitations. They also argued that they had committed no act subsequent to the filing of the *Three Phoenix v. Pace* state court enforcement suit which could give rise to a cause of action for purposes of the "last overt act" rule. Pace asserted various exceptions to the statute of limitations.

The court granted defendants' motion for summary judgment on April 2, 1984, and again upon rehearing on March 7, 1985. In both instances, the district court held that the limitations period for Pace's antitrust claim had begun in 1978 and expired in 1982. Pace timely appealed on March 8, 1985.

## DISCUSSION

"The granting of a summary judgment is reviewable de novo." *Haluapo v. Akashi Kaiun, K.K.*, 748 F.2d 1363, 1364 (9th Cir. 1984). The sole issue on appeal is whether Pace's antitrust action in federal court was barred by the applicable four year statute of limitations.

The Sherman Antitrust Act requires a person to sue within four years to enforce a cause of action claiming treble damages for antitrust injury.[1] Pace alleges that the covenant in the 1973 contract prevented it from competing with Three Phoenix in the market for single disc testing equipment. The district court held that a federal cause of action accrued to Pace in 1978 when Three Phoenix filed suit in state court, but rejected Pace's contentions that the statute of limitations was tolled pending the outcome of the state court litigation.

Pace argues that the statute of limitations does not bar this action because: (a) the four-and-one-half-year state court action was a continuing antitrust violation;

---

**1.** *See* 15 U.S.C. § 15, "[a]ny person who shall be injured in his business or property by anything forbidden in the antitrust laws may sue therefor in any district court ... and shall recover three-fold the damages by him sustained;" and 15

U.S.C. § 15b, "[a]ny action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued."

(b) the publication of an article in the Phoenix Business Journal in 1981 was an overt act which restarted the statute of limitations; (c) the statute was tolled because Pace's damages were speculative and unascertainable in 1978; and (d) there was equitable tolling of the statute pending the outcome of the state court suit. We reject each of these contentions.

## A. State Court Action: Continuing Violation or Last Overt Act?

A cause of action in antitrust accrues each time a plaintiff is injured by an act of the defendant and the statute of limitations runs from the commission of the act. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971). A continuing violation is one in which the plaintiff's interests are repeatedly invaded and a cause of action arises each time the plaintiff is injured. *Hennegan v. Pacifico Creative Service, Inc.*, 787 F.2d 1299 (9th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 279, 93 L.Ed.2d 254 (1986); *See also* 8 Kalinowski, *Antitrust Laws and Trade Regulation* § 103.02[1][b] (1986). However, even when a plaintiff alleges a continuing violation, an overt act by the defendant is required to restart the statute of limitations and the statute runs from the last overt act. *Steiner v. 20th Century-Fox Film Corporation*, 232 F.2d 190, 195 (9th Cir.1956).

Pace argues that each phase of the state court action from the filing of Three Phoenix's complaint through resolution of the final appeal constituted discrete overt acts which restarted the statute of limitations. Three Phoenix counters that the commencement of the lawsuit on September 14, 1978 constituted the last overt act upon which Pace could base a claim. We hold that where the alleged antitrust violation is the attempted enforcement of an illegal contract through judicial process, the initiation of judicial proceedings is the last overt act for purposes of the statute of limitations.

We have held that active enforcement of an illegal contract may, under certain circumstances, constitute an overt act which will restart the statute of limitations. *Airweld, Inc. v. Airco, Inc.*, 742 F.2d 1184, 1190 (9th Cir.1984); *Aurora Enterprises, Inc. v. National Broadcasting Co.*, 688 F.2d 689, 694 (9th Cir.1982); *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 512 F.2d 1264, 1270 (9th Cir.1975). However, "not every act by an antitrust defendant is sufficient to restart the statute of limitations." *Aurora*, 688 F.2d at 694.

Our contract enforcement cases have not reached the issue of whether each phase of an enforcement action is an overt act. In *Sportservice*, 512 F.2d 1264, we held that the illegal contract itself constituted a continuing violation of the Sherman Act because it inflicted continuing and accumulating injury. *Id.* at 1270. Sportservice brought suit to enforce an anti-competitive franchise agreement and Finley counterclaimed under antitrust laws for treble damages. Sportservice argued that the statute of limitations barred the 1968 counterclaim because the last damaging act was the extension of the contract in 1954. In holding that the contract was a continuing antitrust violation, we did not consider the issue of whether the enforcement suit constituted a continuing violation because Finley counterclaimed in the contract enforcement action and therefore the statute of limitations issue did not arise as to the conduct of the lawsuit. In *Aurora*, 688 F.2d 689, we reaffirmed our holding in *Sportservice* but held that the passive receipt of profits from an illegal contract by an antitrust defendant was not an overt act of enforcement and therefore, the statute of limitations barred the action. Since the alleged antitrust violator did not bring an enforcement suit we again did not consider whether legal action constitutes a continuing violation. The facts were similar in *Airweld*, 742 F.2d 1184. In that case the alleged violator not only did not bring an enforcement action but, we held, did not have a contract to enforce during the limitations period.

Most of our discussion of continuing violations and last overt acts arises in refusal to deal cases. In *In re Multidistrict Ve-*

*hicle Air Pollution,* 591 F.2d 68 (9th Cir.), *cert. denied,* 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979) (hereafter *"Air Pollution"*), we held that the statute of limitations barred the action because the last overt act occurred six years before the plaintiff filed suit. In the 1960's AMF Corporation was frustrated in its attempt to gain entry into the air pollution control devices market. AMF filed suit in 1970 against several auto corporations which, in 1964, had refused to install AMF's product in 1966 and later model-year cars. AMF argued that the claim was not barred by the statute of limitations because the auto manufacturers' refusals inflicted continuing injury. We held that the claim was barred because each defendant's 1964 refusal to purchase AMF's device was a final decision made outside the limitations period and any injury resulting within the limitations period was attributable to these last overt acts. *Id.* at 72. We reached a similar result in *David Orgell, Inc. v. Geary's Stores,* 640 F.2d 936 (9th Cir.), *cert. denied,* 454 U.S. 816, 102 S.Ct. 92, 70 L.Ed.2d 84 (1981). In that case, Josiah Wedgwood & Sons, Inc. refused to sell Wedgwood china to Orgell in 1965 and again in 1968, 1976 and 1977. Orgell sued in 1978. He argued that each refusal was a separate antitrust violation. We held that any injury to Orgell resulted from Wedgwood's initial 1965 refusal and the subsequent refusals merely restated a previous final decision therefore the action was time barred. *Id.* at 938.

■ We reached a different conclusion in *Hennegan v. Pacifico Creative Service, Inc.,* 787 F.2d 1299 (9th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 279, 93 L.Ed.2d 254 (1986). In *Hennegan,* a souvenir shop owner brought an antitrust action against tour operators and competitive vendors alleging a conspiracy in which the tour guides shepherded tourists away from Hennegan's shop to the competitors' shops. The initial agreement between the tour guides and the competitors occurred outside the limitations period but the tour guides had shepherded tourists past Hennegan's shop on several occasions within the limitations period. We held that the action was not barred because each time a tour guide shepherded a group of tourists

past Hennegan's shop the act inflicted new and additional injury thereby restarting the statute of limitations. In *Hennegan,* we also reaffirmed that an " 'irrevocable, immutable, permanent and final' " decision made outside the limitations period does not constitute a continuing violation even if the injury continues within the statutory period. *Hennegan,* 787 F.2d at 1301 (quoting *Air Pollution,* 591 F.2d at 72.) However, separate violations within the limitations period that are not controlled by the previous act or decision and which inflict new injury will restart the statute of limitations. *Id.*

■ These cases establish that two elements characterize an overt act which will restart the statute of limitations: 1) It must be a new and independent act that is not merely a reaffirmation of a previous act; and 2) it must inflict new and accumulating injury on the plaintiff.

The initiation of a lawsuit is the final, immutable act of enforcement of an allegedly illegal contract. At that point in time the lawsuit assumes an existence separate from the contract. All subsequent acts are controlled by the exigencies of litigation, not enforcement of the contract. The complaint puts the aggrieved party on notice that there is a possible antitrust violation. In every lawsuit, a party has a right, and an attorney has a duty, to prosecute or defend vigorously. Furthermore, no new injury results from the act of appealing that the defendant does not already endure as a result of the act of filing the action initially. This is true because the reasonable expectation from the commencement of a lawsuit is that the plaintiff will pursue the litigation until it prevails or the last appeal is exhausted.

Normally, the aggrieved party will counterclaim in the enforcement action, *see, e.g., Sportservice,* 512 F.2d 1264, or sue while the alleged violator is otherwise attempting to enforce the illegal contract, *see, e.g., Aurora,* 688 F.2d 689. We see no justification for permitting the aggrieved party to file an action in antitrust more than four years after the conclusion of perhaps protracted litigation between the same parties over the same contract. We agree with the view expressed by the trial court:

Pace was clearly aware of its antitrust claim because it used the antitrust laws as a defense to the state court enforcement action. The same policy reasons that require compulsory counterclaims, compel the conclusion that the filing of the state court action, in which the antitrust laws are clearly at issue, started the limitation time running.

■ We hold that the last overt act in the enforcement of this contract was the initiation of the lawsuit in state court. Any injury to Pace resulting from continued prosecution through the normal course of the appellate process relates back to the initial decision to file. *See Hennegan*, 787 F.2d at 1301; *Air Pollution*, 591 F.2d at 72.[2] The complaint put Pace on notice of a possible antitrust violation and Pace should have counterclaimed or filed a separate action within the time mandated by the statute. Awaiting the outcome of the litigation served no purpose except to delay final resolution.

■ The issue before the court on this appeal is simply whether prosecution of a contract enforcement suit is a single overt act or a continuing antitrust violation. In concluding that it is a single overt act, we do not decide whether particularly vexatious and unjustified trial tactics can give rise to separate antitrust actions or whether they support only a motion for sanctions pursuant to FRCP 11.

### B. Article in Business Journal as Last Overt Act

■ Pace argues that the publication of an article in the Phoenix Business Journal

on July 6, 1981 gave rise to a separate cause of action. The article, "Fast-growing Three Phoenix Co. Plans to Take Disc Test Industry Lead," was based on interviews given by defendant Oglesby, president of Three Phoenix Co., and Stephen T. Meadow, Three Phoenix's attorney. It reported the state court of appeals decision. Pace contends that this article harmed its competitive designs because it "would naturally lead actual and potential customers, investors, co-venturers and employees to infer that Pace's planned introduction of single disc testing products had already been halted."

We find no authority for Pace's contention that publicity of an unfavorable court ruling can constitute an overt act for restarting the statute of limitations. Pace cites only one case, *Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 921 (N.D. Cal.1975), in support of the proposition. Pace's reliance on *Hangards* is misplaced. *Handgards*, does not state that publicity can be an overt act nor does it involve publicity in journals. Rather, it involved a plaintiff who initiated a series of lawsuits to litigate the competition slowly out of business. The plaintiff's use of publicity was simply cited as evidence of bad motive. Finding no authority to the contrary, we affirm the trial court's holding that the article did not violate antitrust laws.

### C. Speculative Damages Exception to the Statute of Limitations

Pace argues that its cause of action was tolled during the state court action until

---

**2.** The decisions of other courts that antitrust counterclaims mature at the time of the filing of the lawsuit is further support for our holding. In *Chest Hill Co. v. Guttman*, 1981–2 Trade Cases, Para. 64,417 (S.D.Ohio 1981), the Court held that the antitrust counterclaim for enforcement of an illegal contract accrues when the first steps are taken judicially to enforce the contract. Similarly, in *National Dairy Products Corp. v. Borden Co.*, 363 F.Supp. 981, 983 (E.D. Wis.1973), the court held that the antitrust counterclaim matured when the action was filed. *National Dairy Products* involved a patent infringement suit where the Court held that an antitrust counterclaim was barred because it was not brought within four years of the filing

of the infringement suit. In *Weber v. Consumers Digest, Inc.*, 440 F.2d 729, 731 (7th Cir.1971) the alleged overt acts were: (1) execution of a covenant not to compete in 1964, (2) commencement of a state court enforcement action on July 12, 1966, and (3) obtaining a preliminary injunction on March 10, 1967. The plaintiff filed the antitrust suit in September of 1969. The court held the action was not barred by the four-year statute of limitations because both the state court action and the motion for injunction were initiated within the limitations period. The court did not hold, however, that motion for preliminary injunction alone constituted an overt act.

the final decision of the Arizona Supreme Court when its damages first became fixed and ascertainable. In *Zenith Radio Corp.*, 401 U.S. at 339, 91 S.Ct. at 806, the Supreme Court stated that:

> if a plaintiff feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action immediately accrues to him to recover all damages incurred by that date and all provable damages that will flow in the future from the acts of the conspirators on that date. . . .

> [T]he cause of action for future damages . . . will accrue only on the date they are suffered; thereafter the plaintiff may sue to recover them at any date within four years from the date they were inflicted.

Pace alleges damages of lost profits from delay in entering the single disc testing equipment market and expenses from defending the state court law suit. These damages, it argues, were too speculative to be ascertainable at the time of the filing and during the pendency of Three Phoenix's law suit.

■ *Zenith*, however, "did not establish new standards for determining whether damages are ascertainable as of a particular date." *Air Pollution*, 591 F.2d at 73. In *Air Pollution*, we stated:

> "The principal cases explaining the criteria for ascertaining whether damages are speculative remain *Bigelow v. RKO Pictures, Inc.*, 327 U.S. 251, 264, 66 S.Ct. 574, [580], 90 L.Ed. 652 (1946) and *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562–66, 51 S.Ct. 248, [250–52], 75 L.Ed. 544 (1931). These cases teach that when the defendant's wrong has been proven, 'the jury may make a just and reasonable estimate of the damage. . . . "[J]uries are allowed to act upon probable and inferential, as well as direct and positive proof" '. 327 U.S. at 264, 66 S.Ct. [574] at 580."

*Id.*, 591 F.2d at 73 (*quoting Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp.*, 546 F.2d 570, 573 (4th Cir.1976)). Thus, uncertain damages, which prevent recovery, are distinguishable from uncertain extent of damage, which does not prevent recov-

ery. *Id.* The former denotes failure to establish an injury, while the latter denotes imprecision with regard to the scope or extent of the injury. The question of whether there is a right to recovery is not to be confused with the difficulty in ascertaining the scope or extent of the injury. *Id.*

■ We find unpersuasive Pace's claim that lost profits for a business that was delayed in entering the market or that never entered the market because of Three Phoenix's state court action constituted speculative damages. In *Air Pollution*, we determined that because the size of the market for 1966 model year cars could be estimated with reasonable accuracy, "[n]o difficulties with projecting market share existed in late 1964 that do not exist today." Thus, we held that the uncertain extent of such damage was neither too speculative nor its amount or nature unprovable. *Id.* at 74. Similarly, in *Charlotte Telecasters*, the Fourth Circuit held that future profits of a cable television system were not too speculative to be subject to proof. 546 F.2d at 573. Likewise, Pace could have estimated the size of and the possible profits from its entry into the single disc testing equipment market.

■ Pace's claim that the statute of limitations was tolled because attorneys fees were uncertain until the conclusion of the litigation is also unpersuasive. We find that this claim falls within the uncertain extent of damages category set out in *Air Pollution*, 591 F.2d at 73, because Pace could have estimated those fees with reasonable certainty.

### D. Equitable Tolling During the State Court Proceeding

Finally, Pace argues that the statute of limitations was suspended pending the outcome of the state court action.

■ Prior judicial actions, however, "do not toll the statute of limitations, no matter how close their relationship to the one at bar." *Ramirez de Arellano v. Alvarez de Choudens*, 575 F.2d 315, 319 (1st Cir.1978); *UAW v. Hoosier Cardinal Corp.*, 383 U.S.

696, 708, 86 S.Ct. 1107, 1114–15, 16 L.Ed.2d 192 (1966) (where the Supreme Court refused to toll a six year Indiana statute of limitations when the federal lawsuit was filed seven years after the cause of action accrued and three years after the state court action was dismissed). In *Ramirez*, the First Circuit reversed a lower court holding that the statute of limitations was tolled during a prior state court mandamus action brought by the same plaintiff against the same defendant and based on the same constitutional right. It held that "to toll the statute, the action must be the case at bar, and not merely a somewhat related action arising from the same facts." *Id.* at 320. Similarly, the Arizona court suit between these parties was related to this federal action, but it was not the same suit. Pace could only enforce its federal rights in federal court. Thus, we hold that the federal statute of limitations was not tolled pending the outcome of the state court suit.

*Mt. Hood Stages, Inc. v. Greyhound Corp.*, 616 F.2d 394 (9th Cir.), *cert. denied*, 449 U.S. 831, 101 S.Ct. 99, 66 L.Ed.2d 36 (1980), is also inapposite. In *Mt. Hood Stages*, we permitted equitable tolling of the statute of limitations "while an administrative agency decide[d] determinative issues within its primary jurisdiction." *Id.* at 405. We found that equitable tolling would serve an important federal interest in accommodating enforcement of the Sherman Act with enforcement of the Interstate Commerce Act, and would not be inconsistent with the purposes of the Clayton Act's limitation period. *Id.* at 395, 405. We distinguish *Mt. Hood Stages* from the instant case because our decision there rested on considerations of federal policy and primary jurisdiction which are not present here.

### CONCLUSION

We affirm the district court's grant of summary judgment for Three Phoenix, Oglesby and Wabash. Pace's antitrust

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth

counterclaim matured at the filing of the state court suit in 1978 and expired in 1982; its federal claim is time barred.

AFFIRMED.