KORODY–COLYER CORPORATION,
Plaintiff-Appellant,

v.

GENERAL MOTORS CORPORATION,
Defendant-Appellee.

No. 87–1180.

United States Court of Appeals,
Federal Circuit.

Sept. 18, 1987.

Michael J. Dennis, Washington, D.C. and Los Angeles, Cal., argued for appellant. With him on the brief was John Joseph Hall, Los Angeles, Cal.

Maxwell M. Blecher, of Blecher & Collins, Los Angeles, Cal., argued for appellee. With him on the brief were Christopher Layne and Ann I. Jones, of Blecher & Collins, Los Angeles, Cal. Also on the brief were Robert C. Weinbaum and Judith L. Collier, of General Motors Corp., Detroit, Mich.

Before MARKEY, Chief Judge, BENNETT, Senior Circuit Judge, and NEWMAN, Circuit Judge.

MARKEY, Chief Judge.

Appeal from a partial summary judgment entered pursuant to Rule 54(b) Fed.R. Civ.P. by the United States District Court for the Central District of California (Pfaelzer, J.) and ordering dismissal as untimely certain antitrust claims appearing in a Second Supplemental and Amended Complaint filed by Korody-Colyer Corporation (Korody) against General Motors Corporation (GM). We affirm.

## BACKGROUND

In January 1980, Korody sued GM, seeking a judgment declaring GM's U.S. Patent No. 3,555,972 invalid. GM counterclaimed for infringement of that patent. In January 1982, Korody answered the counterclaim, alleging *inter alia* that GM's charge of infringement was made in bad faith to hamper competition, that the patent was obtained by fraud, that GM knew there was no basis for a valid patent when it filed its application, and that GM knowingly failed to disclose extensive pertinent prior art to the PTO. At the same time, Korody added an antitrust claim alleging an illegal tie-in and demanding a jury trial on that claim. In July 1982, the district court entered a stipulated order staying proceedings on the antitrust claim pending completion of a bench trial of the patent validity issue. Proceedings on GM's infringement counterclaim were also stayed.

On August 10, 1984, Judge Pfaelzer held GM's patent invalid as fraudulently obtained and for obviousness under 35 U.S.C. § 103. *Korody-Colyer Corp. v. General Motors Corp.*, 224 USPQ 368 (C.D.Cal. 1984). On May 2, 1985, this court affirmed. 760 F.2d 1293, 225 USPQ 1099 (Fed.Cir.1985).

In June 1986, Korody filed the Second Supplemental and Amended Complaint at issue here. That complaint contained an added claim that GM had violated the antitrust laws by enforcing a knowingly invalid patent fraudulently obtained, a claim designated by all concerned as a "Walker Process" claim.[1]

On December 3, 1986, after a hearing, Judge Pfaelzer filed clear, succinct, and complete findings and conclusions and entered her summary judgment of the same date, holding that Korody's "Walker Process" claim was barred by the four-year

---

**1.** In *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247, 147 USPQ 404 (1965), the Court held that enforcement of a patent known to have been procured by fraud could lead to liability if all prerequisites under § 2 of the Sherman Act were shown. In *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 202 USPQ 342 (9th Cir.1979), *cert. denied*, 444 U.S. 1025, 100 S.Ct. 689, 62 L.Ed.2d 659 (1980), the court held that bad faith enforcement of a patent known to be invalid may be the basis for that liability when § 2 prerequisites exist. References in the present text to a "Walker Process" claim should be read in light of the analysis in both *Walker Process* and *Handgards*. The appealed judgment of the district court, and its affirmance here, deal only with the statute of limitations; neither may be read as condoning the type of conduct alleged by Korody.

statute of limitations, 15 U.S.C. § 15(b). The court rejected each of the arguments for tolling presented by Korody.

## ISSUE

Whether the district court erred in dismissing Korody's Second Supplemental and Amended Complaint as barred by the statute of limitations.

## OPINION

### JURISDICTION

In *USM Corp. v. SPS Technologies, Inc.*, 770 F.2d 1035, 1037, 226 USPQ 1038, 1039–40 (Fed.Cir.1985), this court transferred an appeal on a separated antitrust phase of a patent-antitrust suit because: (1) transfer advanced judicial economy, the Seventh Circuit having heard two prior appeals in the case in which underlying issues had been briefed; and (2) the separation occurred before this court existed and could not have been designed to manipulate our jurisdiction. We there cautioned that the decision to transfer "must not be viewed as indicating how we will rule in future cases, for the circumstances that here prevail may well not recur." *Id.*, 226 USPQ at 1040. The present appeal is the first since *USM Corp.* in which antitrust related issues were decided by the district court after the patent phase had been finally decided at the appellate level. Here, however, considerations of judicial economy cut the other way. The circumstance in which a regional circuit had decided the patent phase in an earlier appeal has not recurred. The present appeal, though it turns on application of the statute of limitations, implicates antitrust considerations, with respect to which this court will apply discernible Ninth Circuit law. The district court's jurisdiction was indisputably based on 28 U.S.C. § 1338. This court, having exercised its jurisdiction in the prior appeal, is best situated to and will continue to exercise its jurisdiction in this follow-on appeal.

## KORODY'S ARGUMENTS

It is undisputed that, absent tolling, Korody's Second Supplemental and Amended Complaint (amendment) is barred. Making initially no reference to what the district court did, Korody simply repeats before us the four reasons for tolling rejected by the district court: (1) The July 1982 stay worked an equitable estoppel; (2) The June 1986 amendment related back to the earlier antitrust complaint; (3) GM fraudulently concealed certain evidence; (4) GM's antitrust violation was continuing. None of those arguments has merit.

### (1) Equitable Estoppel

[1] Korody at no point suggested to the district court or to this Court any basis whatever for failure to amend its complaint because of the stay. It admits that its antitrust counsel "withdrew" when the stay was entered, to return to the fray only after the trial and appeal were completed in the patent validity case. It states the obvious, i.e., that the parties "understood" that the stipulated order "stayed the antitrust claim", and implies that it was thereby precluded or excused from amending its antitrust claim. The argument slides over what was stayed, i.e., discovery on Korody's tie-in claim, the *only* antitrust claim then extant.[2] Korody's argument also disingenuously disregards Judge Pfaelzer's clear explanation at the hearing:

> THE COURT: I never—just so that you can add to your argument—the Court never kept them from amending any pleading on any ground whatsoever.
>
> [COUNSEL FOR GM]: Absolutely not.
>
> THE COURT: I don't have any order in that file that said that.

It also disregards this in the district court's finding 11 and conclusion 7:

> 11. At no time did the Court's order preclude Korody from amending or seeking to amend its antitrust complaint.
>
> 7. The statute of limitations was not equitably tolled under the Court's July

**2.** The complaint contained the usual allegations of monopoly, etc., but the only act charged was a tie-in.

21, 1982 Order, because that Order did not preclude amendment of the Complaint to add *Walker Process* claims.

It also disregards this colloquoy at the hearing:

[COUNSEL FOR KORODY]: Yes, your Honor. While this Court was working on that [the related patent validity case] the antitrust attorneys were out of the court, in fact.

THE COURT: They were only out of the Court in the sense that we delayed the trial of the tie-in case. Nobody ever told anybody on Korody-Colyer's side that they could not amend the pleadings.

[COUNSEL FOR KORODY]: Indeed.

THE COURT: Never.

[COUNSEL FOR KORODY]: I agree....

THE COURT: If you want a Walker Process claim you have to plead it.

Korody's reply brief offers an after-the-fact interpretation of its counsel's acknowledgement, saying the parties' "understanding" was not limited to the language of the order (which literally stayed only discovery). Yet Korody points to absolutely no evidence indicating any "understanding" of GM that Korody was precluded from adding its "Walker Process" claim to its pleadings. Nowhere does Korody explain its failure even to seek leave of court to amend. Korody also unfairly accuses Judge Pfaelzer of making a *post hoc* interpretation of the stay when she said the order stayed "only the antitrust action that was there." Nowhere does Korody explain how a claim that had not been made could have been stayed.

Korody's reliance on *Mt. Hood Stages, Inc. v. Greyhound Corp.,* 616 F.2d 394 (9th Cir.), *cert. denied,* 449 U.S. 831, 101 S.Ct. 99, 66 L.Ed.2d 36 (1980), is misplaced. In that case, the court was accommodating enforcement of the Sherman and Interstate Commerce Acts and the factual issues in the antitrust action were raised in the required preliminary administative ICC proceeding. Here the doctrine of primary jurisdiction is absent and the factual and legal issues raised by Korody's "Walker Pro-

cess" could have been fully presented and decided by the district court.

On the entire record, it is clear that, from the time the stay order issued, Korody simply forgot about its antitrust action. Neither before nor after the stay did Korody indicate (until June 1986) any intent to present a "Walker Process" antitrust claim. It cannot now seize upon the stay as basis for excusing its slumber and its failure to amend its pleadings for more than four years.

### *(2) Relation Back*

■ Korody says its amendment asserting a "Walker Process" claim relates back to its original complaint asserting a tie-in. A mere comparison of the two complaints totally undermines Korody's position.

Under Rule 15(c), Fed.R.Civ.P. an amendment may relate back when the earlier complaint gave adequate notice of the new claim. *Besig v. Dolphin Boating & Swimming Club,* 683 F.2d 1271, 1278 (9th Cir. 1982). Korody's earlier complaint asserted a single act allegedly violative of the antitrust laws; i.e., a tie-in. That complaint dealt solely with *unpatented* parts and Korody's alleged inability to obtain them during the four months in which GM conducted its "kit" marketing program. Korody's amendment asserted an entirely different act allegedly violative of the antitrust laws; i.e., enforcement of a fraudulently procured patent. It dealt with *patented* parts and Korody's alleged inability to make, use, or sell them during a period of years. Because Korody's amendment asserts an entirely new claim for relief based upon different facts it does not relate back. *See Fuller v. Marx,* 724 F.2d 717 (8th Cir.1984); *Besig,* 683 F.2d at 1271; *National Distillers & Chemical Corp. v. Brad's Machine Products, Inc.,* 666 F.2d 492 (11th Cir. 1982).

Korody offers two disingenuous arguments in support of its "relation back" position: its original complaint included the catchall and meaningless phrase, "among other things"; and its amendment is merely a "more detailed" statement of its original complaint. The first would undermine

the notice pleading approach of the Federal Rules of Civil Procedure. *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1215 (1969) and cases at 110 n. 61. "Among other things" could not possibly give GM fair notice of Korody's "Walker Process" claim or of any other claim, and to so hold would eviscerate Rule 15(c) and its statute of limitations protection. Korody's second argument is simply untrue. The amendment alleges that GM fraudulently procured the patent, enforced it in bad faith, interfered with Korody's purchase of the patented product, and falsely marked its patented pistons. Those assertions can hardly be deemed a "merely more detailed" statement of a claim that GM is guilty of tying unpatented parts.

Korody builds at most a colorable argument around its citation of *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F.2d 1240 (9th Cir.1982), *cert. denied,* 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983), and *Rohm and Haas Co. v. Dawson Chemical Co.,* 557 F.Supp. 739, 217 USPQ 515 (S.D.Tex.1982), *rev'd on other grounds,* 722 F.2d 1556, 220 USPQ 289 (Fed.Cir.1983), *cert. denied,* 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984), but its reliance on those authorities is misplaced. In those cases, the original and later claims related to the same act and put the opposite party on full notice of the charge.

Korody's assertion that its original complaint put GM on notice that Korody was asserting both tying and enforcement-of-a-fraudulently-obtained-patent claims came as a surprise not only to GM, but to the district court, who said:

> Remember this is a case I have been working on for a long, long time and it would never have occurred to me that there is [in the original complaint] an antitrust violation based on the way they use the patent.

Korody's decision to press its unsupportable "relation back" arguments on appeal come as an equal surprise to us, particularly in view of Judge Pfaelzer's conclusion 6:

> 6. Korody's amended *Walker Process* claims do not relate back under Rule 15(c) of the Federal Rules of Civil Procedure because these amendments state a wholly new cause of action based on entirely different events and seek damages completely different from those originally sought.

### (3) Concealment

■ Korody says GM concealed until 1983 the "Outland Document", a report of GM's patent counsel listing five patents and calling them "the closest prior art". Until it had seen that document, says Korody, it had no basis for amending its complaint to allege a "Walker Process" claim. The argument is fallacious.

First, in 1980, Korody received from GM a number of prior patents and established in the patent trial that GM failed to disclose material prior art patents totalling nine in number. In a conclusion 5, simply ignored by Korody, the district court correctly concluded that Korody had all it needed for its July 1986 amendment in January 1982. That conclusion is confirmed in Korody's January 1982 answer to GM's counterclaim for infringement, which contained these allegations:

> 16. On information and belief, the charge of infringement directed against Plaintiff *was not made in good faith* but for the *purpose of hampering legitimate business competition.*
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> 18. On information and belief, Plaintiff alleges that *the patent in suit was obtained by committing fraud upon the United States Patent Office,* that, before *the application for patent was filed, Defendant made its own search and evaluated the results thereof* and *concluded that there was no basis for a valid patent,* but nevertheless, thereafter proceeded to file the application which resulted in the patent in suit. *Defendant, its patent attorneys, and the applicant for the patent in suit, failed to disclose to the Patent Office extensive prior art references of which they had knowledge, and which were pertinent to the subject matter being claimed* in the application, even though

the disclosure of such information was required by Patent Office rule as well as by case decisional law of the United States Supreme Court. [Emphasis added.]

The foregoing allegations in Korody's January 1982 answer were in substance identical to its 1986 assertion of its "Walker Process" claim, which reads:

(b) the acquisition, through the knowing and active commission of fraud, of the United States and foreign patents on the aforesaid crosshead piston, including U.S. Letters Patent No. 3,555,972 to Hulsing ("Hulsing patent"), which defendant knew was invalid and unenforceable;

(c) the threatened and attempted enforcement and enforcement, in bad faith, of its fraudulently-obtained, invalid and unenforceable patents against competitors in the relevant market and submarket, including plaintiff and plaintiff's suppliers.

Indeed, Korody's 1982 allegations are *closer* than are its 1986 assertions to the language appearing in *Walker Process*, 382 U.S. at 174, 147 USPQ at 405–06 ("fraudulently and in bad faith obtaining and maintaining ... its patent ... well knowing that it had no basis for ... a patent") (ellipses in original).

Second, Korody's argument that its January 1982 allegations were based on "information and belief", and that it could not then have asserted a "Walker Process" complaint without violating Rule 11, comes with particularly poor grace. Korody's answer to GM's counterclaim is of the boiler plate variety, containing twenty "informa-

tion and belief" allegations, most of which never saw the light of day at trial. Within one such allegation, Korody asserted twelve different bases on which it is possible to hold a patent invalid. The answer also included Korody's antitrust tie-in allegations as an affirmative defense of misuse. Korody's effort to demean its allegations as based on "information and belief" is accompanied by no citation of authority that would countenance blind assertions *not* based on information, and its present concern for Rule 11 is at best belated.

Third, Korody's argument that without the Outland Document it could not have asserted intentional, willful concealment of pertinent prior art is specious. Korody's answer made just that allegation, albeit in different words ("[GM] made its own search and evaluated the results thereof and concluded that there was no basis for a valid patent.").

A "Walker Process" claim involves a patentee's enforcement of a patent the patentee knows is invalid. If the Outland Document might have constituted additional evidence of knowledge and intent, or made proof at trial easier, that would not be controlling. The evidence Korody had in 1980, and its January 1982 fraud allegations (GM's bad faith enforcement to injure competition, GM's knowledge of unpatentability before it filed its application, and GM's failure to disclose known pertinent prior art), coupled with the monopoly and market allegations in its then-filed antitrust complaint, obviously encompassed all that was needed to found a "Walker Process" claim.[3] Korody points to *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 223 USPQ 603 (Fed.Cir.1984)

---

**3.** As was well said in *Starview Outdoor Theatre, Inc. v. Paramount Film Distributing Corp.*, 254 F.Supp. 855, 858 (N.D.Ill.1966), "Plaintiffs may not postpone suit until they have all of the information necessary to prove an antitrust violation" when such postponement goes beyond the period of the statute of limitations. Moreover, the Ninth Circuit stated in *Rutledge v. Boston Woven Hose and Rubber Co.*, 576 F.2d 248, 250 (9th Cir.1978) that knowledge that one has a claim is tested on an objective basis ("To avoid the bar of limitation ... plaintiff must allege facts showing affirmative conduct upon the part of the defendant which would ... lead

a reasonable person to believe that he did not have a claim for relief.").

As Judge Pfaelzer perceptively observed in this case, "Is there a patent lawyer alive who doesn't understand what a Walker Process claim is?" Korody attempts to use the latter statement in support of its argument that *GM* was on notice that Korody "had a basis" for a "Walker Process" claim, but Korody thereby blurs the distinction between notice of a basis for a claim and the notice with which the statute of limitations deals, i.e., notice of a party's intent to enforce that claim.

and *J.P. Stevens & Co. v. Lex Tex Ltd.*, 747 F.2d 1553, 1559, 223 USPQ 1089, 1092 (Fed. Cir.1984) and to the distinction it says the court there drew between "fraud" and "inequitable conduct". With the wish as father to the thought, Korody says the allegation of "fraud" in its 1982 answer was of the old, garden variety kind and involved only "non-disclosure". Korody's difficulty is two-fold: The opinions in the cases cited do not say what Korody would have them say; and Korody's answer asserted far more than mere non-disclosure.

In *Argus Chemical Corp. v. Fibre Glass-Evercoat Co., Inc.*, 812 F.2d 1381, 1384–85, 1 USPQ2d 1971, 1973–74 (Fed.Cir. 1987), this court noted the difference between inequitable conduct that may render a patent unenforceable and intentional fraud that may lead to antitrust liability. And rightly so, for in the former instance a party raises a shield and in the latter instance a party unsheaths a sword. The conduct alleged by Korody in 1982 (known absence of basis for patenting, knowing non-disclosure of pertinent art, and bad faith enforcement) falls within both categories. Though fully useful as a shield (as it successfully was), that conduct was clearly such as to warrant an assertion of a "Walker Process" type antitrust claim.

Lastly, Korody vigorously argues that summary judgment was improper because the district court resolved a genuine issue of material fact when it found that GM had disclosed documents relating to the closest prior art, including the Outland Document, in 1980. That the parties dispute the date on which the Outland Document was disclosed, and the district court in colloquy referred to that document as "crucial", does not make the issue one of genuine material fact. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Korody's "issue of fact" argument must fail for one main, compelling reason: disclosure of The Outland Document was not a *sine qua non* for Korody's "Walker Process" claim, the basis for which, as above indicated, Korody had fully set forth in its January 1982 answer. The clock having begun to tick when Korody received the 1980 disclosure or, at the latest, when Korody confirmed its knowledge of all needed information in January 1982, a 1983 disclosure was simply irrelevant to the dispositive issue, i.e., whether the clock had been ticking too long when Korody sought to amend in 1986. Whether the Outland Document was disclosed in 1980 or in 1983, was not, therefore, a genuine issue of fact material to a determination of whether the statute of limitations must be tolled. *See* Rule 56(e), Fed.R.Civ.P.

*(4) Continuing Violation*

Because GM's antitrust violation was "continuing", says Korody, damages should be awarded for the period July 1982–July 1986.

[redacted] Korody argues that GM's threats against its supplier Riken in 1983 was a violation. That issue was not raised before the district court. It is, therefore, improperly presented and cannot be considered here.[4] Korody then argues that GM's defense of its patent through the trial and appeal of Korody's declaratory judgment suit constituted a continuing violation.[5]

[redacted] The Ninth Circuit, whose antitrust rulings are followed by this court in appeals from judgments of district courts of that circuit, *see Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 875, 228 USPQ 90, 99 (Fed.Cir.1985), rejected Korody's continuing violation argument in *Pace Industries, Inc. v. Three Phoenix Co.*, 813 F.2d 234 (9th Cir.1987), a case involving a fact pattern substantially identical (Korody admits it is "facially similar") in relation to the issue here. In *Pace*, the court said:

4. The record contains only the unsubstantiated statement of Korody's president that there was such a threat in 1983.

5. Though the distinction is of no moment in this case, Korody's repeated reference to GM's "enforcement" can be misleading. GM's mandatory counterclaim for infringement was never tried. The trial and appeal dealt only with the validity and enforceability of GM's patent.

*The initiation of a lawsuit is the final, immutable act of enforcement of an allegedly illegal contract.* At that point in time the lawsuit assumes an existence separate from the contract. All subsequent acts are controlled by the exigencies of litigation, not enforcement of the contract. The complaint puts the aggrieved party on notice that there is a possible antitrust violation. In every lawsuit, a party has a right, and an attorney has a duty, to prosecute or defend vigorously. Furthermore, no new injury results from the act of appealing that the defendant does not already endure as a result of the act of filing the action initially. This is true because the reasonable expectation from the commencement of a law suit is that the plaintiff will pursue the litigation until it prevails or the last appeal is exhausted.

\* \* \* \* \* \*

*We hold that the last overt act* in the enforcement of this contract was *the initiation of the lawsuit in state court.* Any injury to Pace resulting from continued prosecution through the normal course of the appellate process related back to the initial decision to file.

*Id.* at 238–39 (citations omitted; emphasis added.)

Korody has shown no error in conclusions 4 and 9 of Judge Pfaelzer:

4. GM's last overt act to "enforce" its Hulsing patent, its April 13, 1981 letter to Korody, was more than four years prior to the filing of Korody's Second Supplemental and Amended Complaint.

\* \* \* \* \* \*

9. Because the last overt act taken by GM in defense of its Hulsing patent was more than four years before Korody filed its amendment to add *Walker Process* claims, no tolling of the statute of limitations by virtue of a continuing antitrust violation can be established.

Thus, Korody's "continuing violation" argument has no support in fact or law.

## ATTORNEY FEES

Korody's brief, in places, recognizes that it stipulated to the stay order, and yet, in other places, argues that GM should be estopped to rely on the statute of limitations because GM "actively sought and obtained" the stay.

In asserting that GM "sought" the stay, Korody not only ignored its own stipulation (and its assertion elsewhere in its brief that the parties stipulated the stay to conserve resources and judicial economy), but presented a partial and distorted quotation from *American Pipe and Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Korody's brief says:

The Supreme Court "has not hesitated to find the statutory period tolled or suspended by the conduct of the defendant" where the policies of repose and certainty inherent in the limitations provisions are fulfilled. *American Pipe and Construction Co. v. Utah,* 414 U.S. 538, 558–559, 94 S.Ct. 756, 768–69, 38 L.Ed.2d 713 (1974).

What the Court said in *American Pipe,* 414 U.S. at 559, 94 S.Ct. at 769, was:

Similarly, in cases where the plaintiff has refrained from commencing suit during the period of limitation because of *inducement by the defendant, Glus v. Brooklyn Eastern Terminal,* 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770, or because of fraudulent concealment, *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743, this Court has not hesitated to find the statutory period tolled or suspended by the conduct of the defendant. (Emphasis added.)

If the Outland Document were not disclosed in 1980, as above indicated, that would not have constituted fraudulent concealment of the basis for Korody's amendment, a basis it had fully on hand in what was disclosed in 1980 and asserted in Korody's 1982 answer. Nothing of record indicates, and Korody does not argue, that GM "induced" it to refrain from amending its complaint. The deletion from the quote, if undetected, would thus have served Korody's interest. Korody's reply brief makes no mention of why it distorted the quota-

tion by deleting "inducement by the defendant", though the distortion was set forth in GM's brief.

Though GM called to Korody's attention the inapplicability of *Pace* to this appeal before Korody filed its brief, Korody persisted in presenting its version of *Pace* to this court as support for its continuing violation theory. Indeed, Korody not only ignored the Ninth Circuit's explicit rejection of the theory it presented here, but went further in separately citing *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 512 F.2d 1264 (9th Cir.1975) and *Aurora Enterprises, Inc. v. National Broadcasting*, 688 F.2d 689 (9th Cir.1982) without recognizing or informing this court that those cases had anything to do with *Pace*, or that in *Pace* the Ninth Circuit had *expressly distinguished* those cases as not dealing with the issue before it and now before us.[6]

Korody quotes a portion of a brief filed by GM's present counsel in *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 223 USPQ 214 (9th Cir.1984), *cert. denied*, 469 U.S. 1190, 105 S.Ct. 963, 83 L.Ed.2d 968 (1985) (*Handgards II*), and quotes a portion of the court's opinion in that case. In both quotations, Korody wrenches the quoted material completely out of context, resulting in a presentation that mischaracterizes and misleads. *Handgards II* and Korody's quotes simply have nothing to do with the statute of limitations/continuing violation issue so vigorously pressed by Korody in this appeal.

Though each of the foregoing instances was called to Korody's attention in GM's brief, Korody's reply brief makes no reference whatever to them. Korody's filing and maintenance of the appeal borders the frivolous. It is saved from that designation only by some of its arguments. Though lacking merit, those arguments appear sufficiently colorable to bring the appeal itself just inside the border of frivolity.

That we do not find the entire appeal frivolous, however, does not excuse Korody's above-described distortions, which wasted the resources of the court and the parties and abused the judicial process. Though we consider those distortions reprehensible, we do not find that GM faced untoward difficulties in responding to them and therefore decline to award GM its attorney fees on appeal.[7]

## CONCLUSION

Korody has shown no error of any kind in the careful and correct determinations of the district court. Accordingly, the partial summary judgment appealed from is affirmed.

AFFIRMED.

---

6. Korody at one point says *Pace* is "not inconsistent" with its position, but "to the extent it might be" it should not be followed "because it is not a final decision or is wrongly decided" without saying why it was not "final" or why it was "wrongly decided." Korody does then attempt to distinguish *Pace*, on the sole and irrelevant ground that it involved suits in state and federal courts. That treatment does not excuse the waste of judicial and litigant resources created by the need to deal with Korody's presentation of *Pace*.

7. GM indicated in its briefs an intent to move for sanctions if it prevailed on appeal. There is no need for such a post-decision motion, which would require the court to re-visit the briefs. Requests that particular conduct be sanctioned may and should when appropriate be stated in a brief. Moreover, it is the abuse of the judicial process that is the cause for sanction and it is not necessary to await a determination of which side prevails before requesting a sanction. As indicated in the text, a filing of such a post-decision motion in this case would be fruitless.