**FIFTH THIRD BANK OF WESTERN OHIO, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 95–503 C.

United States Court of Federal Claims.

July 12, 2002.

Alan M. Grimaldi, Washington, DC, for plaintiff. Robert M. Bruskin, Timothy K. Armstrong, Alexander B. Berger, and Grace Graham, Howrey Simon Arnold & White, LLP, of counsel. Tina Woods, Fifth Third Bank of Western Ohio, Dayton, OH, of counsel.

David A. Levitt and Brian A. Mizoguchi, Jr., Washington, DC, with whom was Deputy Assistant Attorney General Stuart E. Schiffer, for defendant. Claire McGuire, FDIC, of counsel.

### ORDER

MILLER, Judge.

Having ruled on the principal issues governing liability in *Fifth Third Bank of W.*

Ohio v. United States, 52 Fed.Cl. 264 (2002), the court turns to the two dispositive issues remaining from the motions that predate assignment to this judge. *United States v. Winstar Corp.*, 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996), is the predicate for this case, and the background facts are recited in *Fifth Third*, 52 Fed.Cl. at 265–69. At issue is whether plaintiff's claim for breach of contract and taking with regard to its merger with Sentry Savings and Loan Company ("Sentry") relates back to plaintiff's original claims for purposes of satisfying the applicable statute of limitations, and whether the Federal Home Loan Bank Board ("FHLBB") and the Federal Savings and Loan Insurance Corporation ("FSLIC") had authority to enter into a "supervisory goodwill" contract concerning a merger with a thrift that was not insured by the Federal Government.[1] Argument is deemed unnecessary.

### 1. Relation back

The original complaint of Fifth Third Bank of Western Ohio ("plaintiff") was filed on August 4, 1995, and alleged breach of contract and takings with regard to transactions with five Ohio thrifts. Plaintiff's amended complaint, adding the claim as to the Sentry transaction, was filed on October 23, 1996. The parties do not dispute that the amended complaint was not filed within the six-year statute of limitations applicable in the United States Court of Federal Claims, 28 U.S.C. § 2501 (2000).

▮ The statute of limitations is a condition on the sovereign's consent to suit and, as such, is a jurisdictional limitation that must be strictly construed. *Soriano v. United States*, 352 U.S. 270, 273, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957); *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576–77 (Fed.Cir.1988). RCFC 15(c)(2), however, provides that an amendment of a pleading relates back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of

---

1. The court had deferred ruling on the narrow question of authority considered below in order to allow the parties to address intervening case-law. *Fifth Third*, 52 Fed.Cl. at 269–70 n. 9.

Additionally, prior to assignment to this judge, defendant moved to dismiss the Sentry claim as time-barred.

the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." The test for determining whether a claim arose out of the "conduct, transaction, or occurrence" underlying the initial pleading is "whether the general fact situation or the aggregate of the operative facts underlying the claim for relief in the first petition gave notice to the government of the new matter." *Vann v. United States,* 190 Ct.Cl. 546, 557, 420 F.2d 968, 974 (1970) (construing a rule identical to RCFC 15(c)); *accord Creppel v. United States,* 33 Fed.Cl. 590, 594 (1995). "The general rule ... is that ... relation back does not extend to amendments that add new parties or causes of action." *Snoqualmie Tribe of Indians v. United States,* 178 Ct.Cl. 570, 588, 372 F.2d 951, 961 (1967); *cf. Korody–Colyer Corp. v. Gen. Motors Corp.,* 828 F.2d 1572, 1575 (Fed. Cir.1987).

 Plaintiff's claims concern alleged contracts that specifically govern the accounting treatment to be accorded supervisory goodwill arising out of its acquisition of, and merger with, various thrifts between 1982 and 1985. Plaintiff does not allege a single contract under which the Government promised that plaintiff could account for all of its transactions using the purchase method of accounting and count the resulting goodwill towards regulatory capital requirements over its estimated useful life. Instead, the contracts with regard to each transaction are the bases of distinct claims, involving discrete and transaction-specific promises by the Government.

> Plaintiff's claims against the United States involve contracts between the parties governing five separate supervisory thrift acquisition transactions solicited and approved by the government through the FHLBB. On five separate occasions between April 1982 and August 1985, the FHLBB and FSLIC entered into contractual agreements with Citizens Federal, whereby Citizens Federal agreed to acquire some or all of the offices of five insolvent or nearly insolvent savings and loan associations located in Ohio.

Compl. filed Aug. 4, 1995, ¶ 3.

Consequently, the Sentry claim arises out of operative facts that predominantly are distinct from those underlying its other claims. Although the alleged breach in each claim relates to Congress's enactment of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183, and subsequent changes in the Government's regulation of the thrift industry, *see Winstar,* 518 U.S. at 856–57, 116 S.Ct. 2432, and although plaintiff generally alleges that the contracts were motivated by FHLBB's national policy of encouraging healthy thrifts to acquire failing thrifts, *see id.* at 847–48, 116 S.Ct. 2432, the facts that will establish the elements of a contract with the Government as to the Sentry transaction are almost entirely separate from those that will establish contracts with respect to plaintiff's other transactions. These facts generally involve communications between the parties before, during, and after the process for obtaining regulatory approval for each transaction. *See Fifth Third,* 52 Fed. Cl. at 275–78. Plaintiff's original complaint anticipates that the evidence on formation will be unique for each claim: "The basic terms of the agreement between Citizens Federal and the government concerning the Cardinal acquisition were negotiated by the parties and then set forth expressly in the contract documents governing the transaction." Compl. ¶ 23; *accord id.* ¶ 31 (Gateway); *id.* ¶ 39 (Homestead); *id.* ¶ 47 (First); *id.* ¶ 55 (Freedom). Plaintiff's observation that the processes for obtaining FHLBB approval of each transaction were governed by the same regulatory framework overlooks the more significant fact that each transaction was dealt with in a separate process.

Contrary to plaintiff's argument, the conduct, transaction, or occurrence underlying its claims is not simply "the implementation of FIRREA and its effects on Citizens' previously acquired supervisory goodwill." Pl.'s Br. filed May 13, 2002, at 2. Of equal, if not greater, significance are the facts that plaintiff alleges establish the parties' mutual intent to enter into a contract regarding the treatment of supervisory goodwill. Nothing among the facts and occurrences in plaintiff's original complaint gave defendant notice that

plaintiff was also alleging a breach of a contract with regard to Sentry, *see Spehr v. United States*, 51 Fed.Cl. 69, 83 (2001) (inquiring whether late-filed claim was a "logical product of the general fact situation" set forth in original pleading), or that such a claim was inadvertently omitted, *see Moore v. United States*, 42 Fed.Cl. 595, 597–98 (1998). Plaintiff's original complaint set forth facts supporting five specific and separate contractual undertakings by the Government. Plaintiff's claim as to Sentry is an "entirely new claim for relief based upon different facts" and, therefore, does not relate back under RCFC 15(c). *Korody–Colyer*, 828 F.2d at 1575.

*Bank of America, FSB v. United States*, 51 Fed.Cl. 500 (2002), and *Castle v. United States*, 48 Fed.Cl. 187 (2000), are both inapposite. Third parties in *Bank of America* attempted to join the litigation as plaintiffs. Although the statute of limitations technically barred these plaintiffs' complaints, the court concluded that they related back to the timely filing of the complaints of the original plaintiffs. The late-filing plaintiffs, however, asserted claims identical to those asserted by the original plaintiffs and therefore satisfied the "conduct, transaction, or occurrence" test. Indeed, defendant conceded that this was so. 51 Fed.Cl. at 512. For this reason the court decided the statute of limitations issue under RCFC 17's "real party in interest" test rather than RCFC 15. *Id.* at 513–14 ("Rule 15 cases deal primarily with additional plaintiffs who, though they share an identity of interest with the original plaintiff, nonetheless bring to the table additional injuries. Here, in contrast, investor plaintiffs' participation in the suit in no way enlarges the fact, nature, or amount of the government's liability."). *Castle*, on the other hand, was decided under RCFC 17(a) alone and had nothing to do with RCFC 15 or the "conduct, transaction, or occurrence" test. 48 Fed.Cl. at 194–95.

Plaintiff cannot avoid the "conduct, transaction, or occurrence" test by arguing that defendant would not suffer substantial preju-

dice by an untimely claim.[2] Certainly, notice and prejudice are dominant concerns implicated by any statute of limitations or amended pleading. *See Snoqualmie Tribe*, 178 Ct. Cl. at 586–87, 372 F.2d at 960 (rule's purposes are "intertwined with that of the statute of limitations which it permits the moving party to circumvent," one of which is "to ensure that parties are given formal and seasonable notice that a claim is being asserted against them"); *cf. Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 149–50 n. 3, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam) ("The rationale of [FED. R. CIV. P.] 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide."). RCFC 15(c)'s focus on plaintiff's claims and their underlying facts, however, adequately addresses the issues of notice and prejudice. *See Snoqualmie Tribe*, 178 Ct.Cl. at 587 n. 5, 372 F.2d at 960 n. 5 ("Courts can assure adequate notice in applying the 'transaction or occurrence' standard."); *Hemphill Contracting Co. v. United States*, 34 Fed.Cl. 82, 87 (1995) (same). More fundamentally, "in the Court of Federal Claims neither notice nor considerations of prejudice can create or enlarge the waiver of sovereign immunity." *S. Cal. Fed. S & L Ass'n v. United States*, 52 Fed.Cl. 444, 458 (2002).

Because plaintiff's claim as to the Sentry transaction does not arise out of the conduct, transactions, or occurrences alleged in plaintiff's original complaint, the Sentry claim does not relate back to the original complaint and is therefore untimely. Plaintiff's claim as to the Sentry transaction must therefore be dismissed for lack of jurisdiction under RCFC 12(b)(1).

### 2. *Authority*

Because of the fractured, piecemeal nature in which *Winstar* cases have been litigated, the court deems it prudent to render a decision in the alternative on defendant's motion for summary judgment on the question of authority.

---

2. The court makes no finding as to defendant's potential prejudice or notice independent of the original complaint. The court only determines

that such considerations will not allow relation back of an untimely claim that otherwise fails the "conduct, transaction, or occurrence" test.

■ An indispensable element of a contract with the Government is the actual authority of the government representative whose conduct is relied upon to bind the Government in contract. *Lewis v. United States,* 70 F.3d 597, 600 (Fed.Cir.1995); *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990). Genuine disputes over material facts that may significantly affect the resolution of this element would preclude an entry of judgment on the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ Following the Supreme Court's decision in *Winstar,* the Court of Federal Claims has proceeded on the understanding that the authority of FHLBB and FSLIC to make promises regarding the treatment of supervisory goodwill is their power to guarantee insured thrifts against losses arising from the acquisition of failing insured thrifts, 12 U.S.C. § 1729(f)(2) (1982) (repealed 1989); *Winstar,* 518 U.S. at 890–91, 116 S.Ct. 2432; *Home Savings of Amer., F.S.B. v. United States,* 50 Fed.Cl. 427, 441 (2001). Section 1729(f)(2)(A) provided:

> In order to facilitate a merger or consolidation of an insured institution described in subparagraph (B) with another insured institution or the sale of assets of such insured institution and the assumption of such insured institution's liabilities by another insured institution, the Corporation is authorized, in its sole discretion and upon such terms and conditions as the Corporation may prescribe—
>> (i) to purchase any such assets or assume any such liabilities;
>> (ii) to make loans or contributions to, or deposits in, or purchase the securities of, such other insured institution . . .;
>> (iii) to guarantee such other insured institution . . . against loss by reason of such other insured institution's merging or consolidating with or assuming the liabilities and purchasing the assets of such insured institution . . . .

Plaintiff concedes that the authority provided in section 1729(f)(2) is limited to mergers with, or acquisitions of, an "insured institution." Because Sentry was not federally insured, section 1729(f)(2) cannot provide the authority for promises regarding the accounting treatment to be accorded the Sentry transaction. 12 U.S.C. § 1724(a) (1982) (repealed 1989) (defining "insured institution" as an "institution whose accounts are insured under this subchapter"); *Home Savings,* 50 Fed.Cl. at 441–42.

To avoid this statutory barrier, plaintiff argues that promises regarding supervisory goodwill are not guarantees against loss and therefore are not subject to the limitations of section 1729(f)(2). According to plaintiff, the Supreme Court in *Winstar* did not ground the Government's authority on section 1729(f)(2), but, rather, on FSLIC's general power to make contracts under 12 U.S.C. § 1725(c)(3) (1982) (repealed 1989), or the executive's inherent power to use contracts in carrying out programs. *See Winstar,* 518 U.S. at 890 n. 36, 116 S.Ct. 2432.

### 1) *The plurality opinion*

Contrary to plaintiff's argument, the plurality in *Winstar* repeatedly characterized supervisory goodwill promises as guarantees against loss. In determining that the unmistakability doctrine did not apply, the plurality in *Winstar* emphasized that a promise to account for supervisory transactions in a particular manner is a promise to bear the risk of a change in the regulations instead of a promise not to change the regulations: "We read this promise as the law of contracts has always treated promises to provide something beyond the promisor's absolute control, that is, as a promise to *insure the promisee against loss* arising from the promised condition's nonoccurrence." *Winstar,* 518 U.S. at 868–69, 116 S.Ct. 2432 (emphasis added); *id.* at 881, 116 S.Ct. 2432 ("The contracts have been read as solely risk-shifting agreements and respondents seek nothing more than the benefit of promises by the Government to insure them against any losses arising from future regulatory change."); *id.* at 887, 116 S.Ct. 2432 ("[T]he Government agreed to do something that did not implicate its sovereign powers at all, that is, to indemnify its contracting partners against financial losses arising from regulatory change."); *id.* at 918,

116 S.Ct. 2432 (Breyer, J., concurring) (concluding that Government made "a binding promise that would oblige it to hold the thrifts harmless from the effects of future regulation (or legislation)"); *Home Savings,* 50 Fed.Cl. at 441 (citing *Winstar* for the proposition that "a supervisory goodwill promise functioned as a guarantee against loss"); *cf. Hughes Communications Galaxy, Inc. v. United States,* 998 F.2d 953, 958–59 (Fed.Cir.1993) (construing government obligation to provide launch priority and scheduling in accordance with particular policy as obligation to "bear the cost of changes in launch priority and scheduling resulting from the revised policy," rather than obligation not to change policy).[3]

The plurality's characterization of the promises at issue in *Winstar* was not limited to its discussion of the unmistakability doctrine: "The answer to the Government's unmistakability argument also meets its two related contentions on the score of ultra vires . . . ." *Winstar,* 518 U.S. at 888, 116 S.Ct. 2432.

> We recognize, of course, that while agreements *to insure private parties against the costs of subsequent regulatory change* do not directly impede the exercise of sovereign power, they may indirectly deter needed governmental regulation by raising its costs. But all regulations have their costs, and Congress itself expressed a willingness to bear the costs at issue here when it authorized FSLIC to "guarantee [acquiring thrifts] against loss" that might occur as a result of a supervisory merger. 12 U.S.C. § 1729(f)(2) (1988 ed.) (repealed 1989).

*Winstar,* 518 U.S. at 883, 116 S.Ct. 2432 (emphasis added). The plurality in *Winstar*

read section 1729(f)(2) not only as the source of the Government's authority, but also as evidence that Congress specifically anticipated making promises to insure private parties against changes in regulatory accounting. The plurality manifestly concluded that the losses insurable under section 1729(f)(2) included losses caused by a change in regulations that upset the common understandings on which these transactions were based. *See also id.* at 890, 116 S.Ct. 2432 ("Nor is there any reason to suppose that the breadth of this authority [*i.e.,* section 1729(f)(2)] was not meant to extend to contracts governing treatment of regulatory capital."). However, as plaintiff concedes, the authority under section 1729(f)(2) is limited to transactions involving insured thrifts and would therefore not support plaintiff's putative contract as to the Sentry transaction.

The plurality's reasoning was not inconsistent with that of the Federal Circuit, which concluded that FHLBB and FSLIC were empowered to make binding promises regarding the accounting treatment of supervisory goodwill based on FSLIC's authority "to extend assistance to acquirers of insolvent FSLIC-insured thrifts" under 1729(f)(2). *Winstar,* 64 F.3d at 1548; *accord Cal. Fed. Bank, FSB v. United States,* 245 F.3d 1342, 1347 (Fed.Cir.2001) (relying on section 1729(f)(2) as authority for a promise by FHLBB). Just as the Federal Circuit recognized that "FSLIC's authority to provide assistance could not exceed the cost of liquidating the thrift," *Winstar,* 64 F.3d at 1548; *see* 12 U.S.C. § 1729(f)(4), FSLIC's authority did not extend to mergers with, or consolidations of, non-insured thrifts.

The plurality also cited FSLIC's general authority under 12 U.S.C. § 1725(c)(3) "to make contracts." 518 U.S. at 890, 116 S.Ct.

---

**3.** This is not to say that the Government did not promise " 'to recognize the supervisory goodwill and the amortization periods reflected' in the agreements between the parties." *Winstar,* 518 U.S. at 868, 116 S.Ct. 2432 (quoting *Winstar Corp. v. United States,* 64 F.3d 1531, 1541–42 (Fed.Cir.1995) (en banc)). The plurality conceded that performance of the Government's promise "require[d] exercise (or not) of a power peculiar to the Government." *Id.* at 880, 116 S.Ct. 2432; *see also id.* at 929–30, 116 S.Ct. 2432 (Rehnquist, C.J., dissenting) (noting tension between plurality's characterization of promise as

insuring thrifts against loss and plurality's conclusion that FHLBB and FSLIC " 'were contractually bound to recognize the supervisory goodwill and the amortization periods reflected' in the agreements between the parties"). Moreover, five members of the Court proceeded on the understanding that the operative promise at issue was a promise to regulate in a certain manner. *See Winstar* at 919–20, 116 S.Ct. 2432 (Scalia, J., concurring in the judgment); *id.* at 929–30, 116 S.Ct. 2432 (Rehnquist, C.J., dissenting).

2432; *accord Cal. Fed*, 245 F.3d at 1347; *Winstar*, 64 F.3d at 1548. In a footnote the plurality also mentioned the executive's inherent power to use contracts in carrying out programs. *See Winstar*, 518 U.S. at 890 n. 36, 116 S.Ct. 2432. Plaintiff seizes upon these references as evidence that FSLIC possessed authority independent of section 1729(f)(2) to enter into contracts with non-insured thrifts. As a threshold matter, plaintiff does not explain why, if the authority to make supervisory goodwill promises is not found in section 1729(f)(2), the plurality chose to discuss that provision at all, let alone assign to it such primacy.[4] Regardless, "[h]aving found that a Code section specifically addressing assistance to thrift institutions does not contain the grant of authority alleged by plaintiffs, we cannot find that authority in more general Code sections." *Home Savings*, 50 Fed.Cl. at 442 (citing *Morton v. Mancari*, 417 U.S. 535, 550–51, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974)); *Schmidt v. Dep't of Interior*, 153 F.3d 1348, 1356–57 (Fed.Cir.1998). A finding that FHLBB or FSLIC's general contractual authority allowed them to provide assistance in any circumstances would negate the limitations in section 1729(f)(2). *Moskal v. United States*, 498 U.S. 103, 109–10, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990).

### 2) *Justice Scalia's opinion*

Justice Scalia, concurring in the judgment and joined by Justices Kennedy and Thomas, broadly endorsed the plurality's discussion of authority. While Justice Scalia determined that the plurality's characterization of the promises as insurance against loss arising from future regulatory change properly could not avoid application of the unmistakability doctrine, he concluded that the doctrine was satisfied. Justice Scalia reasoned that whatever authority was needed to bind the Government to a promise not to change the accounting regulations was "satisfied by the statutes which the principal opinion identifies as conferring upon the various federal bank regulatory agencies involved in this case authority to enter into agreements of the sort at issue here." *Winstar*, 518 U.S. at 923, 116 S.Ct. 2432 (Scalia, J., concurring in the judgment) (citing *Winstar*, 518 U.S. at 890–91, 116 S.Ct. 2432).

Unlike the plurality opinion, Justice Scalia's characterization of the promise at issue as affirmative agreements to regulate in a certain manner does not engage precisely the text of section 1729(f)(2). Nevertheless, the concurrence's unqualified endorsement of the plurality's authority analysis indicates that seven members of the Court agreed that section 1729(f)(2) provided the authority necessary to uphold the contracts at issue.[5] The concurrence's endorsement of a provision specifically addressing assistance to thrift institutions precludes this court from inferring that Justice Scalia, in fact, relied on another, broader grant of authority. Likewise, this court cannot interpret his opinion to dispense with the limitation in section 1729(f)(2) that assistance is only authorized for mergers with, and consolidations of, insured thrifts.

Because *Winstar* determined that the authority of FHLBB and FSLIC to make promises regarding the treatment of supervisory goodwill is their statutory authority to guarantee insured thrifts from losses arising from the acquisition of failing insured thrifts under 12 U.S.C. § 1729(f)(2), and because that statutory authority does not extend to mergers with, or acquisitions of, uninsured institutions such as Sentry, FHLBB did not have the requisite authority to support a

---

4. Conversely, it would be expected that the plurality would respond to defendant's authority argument by first observing FSLIC's general power "to make contracts" before identifying more specific express authority governing supervisory goodwill promises. The general authority, enacted in the National Housing Act of 1934, Pub.L. No. 73–479, § 402(c)(3), 48 Stat. 1246, 1256, predated section 1729(f)(2), which was added by the Financial Institutions Regulatory and Interest Rate Control Act of 1978, Pub.L.No. 95–630, § 105(b)(2), 92 Stat. 3641, 3647.

5. Chief Justice Rehnquist, joined by Justice Ginsburg, rejected the plurality's interpretation of the underlying promise. The Chief Justice reasoned that "the principal opinion's reading of additional terms into the contract so that the contract contains an unstated, additional promise to insure the promisee against loss arising from the promised condition's nonoccurrence seems the very essence of a promise implied in law, which is not even actionable under the Tucker Act, rather than a promise implied in fact, which is." *Winstar*, 518 U.S. at 930, 116 S.Ct. 2432 (Rehnquist, C.J., dissenting).

contract as to the Sentry transaction. The only other contractual authority identified by plaintiff necessarily is qualified by the specific authority in section 1729(f)(2). Defendant is therefore entitled to judgment as a matter of law with respect to plaintiff's claim as to the Sentry transaction. Accordingly,

**IT IS ORDERED**, as follows:

1. Defendant's motion to dismiss plaintiff's claim as to the Sentry transaction is granted.

2. Pursuant to RCFC 54(b) and there being no just reason for delay, the Clerk of the Court shall enter judgment dismissing the claim of the amended complaint pertaining to Sentry without prejudice for lack of subject matter jurisdiction.

3. The court's chambers this date transmitted a copy of this order to counsel by facsimile transmission.

4. No costs on the dismissal.

5. A scheduling order is being entered separately.