Samuel CONERLY, Plaintiff-Appellant,

v.

WESTINGHOUSE ELECTRIC CORP. et al., Defendants-Appellees.

No. 77–3909.

United States Court of Appeals, Ninth Circuit.

July 14, 1980.

---

Eric D. Carlyle, San Jose, Cal., for plaintiff-appellant.

Edwin L. Currey, Jr., San Francisco, Cal., for defendants-appellees.

Before ANDERSON and TANG, Circuit Judges, and WYATT,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

Conerly appeals from the dismissal of his civil rights action for employment discrimination under 42 U.S.C. § 1981 against Westinghouse. The district court dismissed Conerly's action because it had not been filed until twenty-seven years after the alleged act of discrimination had occurred, and was therefore barred by the statute of limitations.

When Conerly was hired by Westinghouse on January 4, 1949, he was the only black employee in his division. He was subsequently laid off on January 10, 1950. On July 3, 1950, Conerly returned to work at Westinghouse. He continued working for Westinghouse until 1970 when he was placed on a disability retirement pension.

* The Honorable INZER B. WYATT, Senior United States District Judge for the Southern District of New York, sitting by designation.

Conerly claims that the only reason he was laid off was because of his race. Although the 1950 layoff was supposed to be under the "last hired, first fired" concept, Conerly alleges that there were white employees in his division with less seniority who were not laid off. Because of the layoff, Conerly lost his seniority status, at least as it dated from 1949. Since later promotions and salary increases were determined by seniority status, Conerly claims that the whites who were not laid off (but should have been instead of him) advanced more rapidly than did he.

In addition, Conerly alleges that Westinghouse both suppressed and failed to disclose the facts surrounding the layoff. He asserts that he did not discover the alleged discrimination until July of 1974 when he gained access to seniority lists which showed that whites with less seniority were kept on the job when he was laid off in 1950.

■ In June of 1977 Conerly filed the present civil rights action against Westinghouse. In his original complaint, Conerly alleged only a cause of action for employment discrimination against Westinghouse. Conerly later moved to amend the complaint to include the International Brotherhood of Electrical Workers as a defendant, and to add a second cause of action for fraud. The court below granted Conerly's motion to amend, and on September 16, 1977, dismissed the amended complaint with prejudice. Conerly brings his appeal from that dismissal. A dismissal with prejudice constitutes a final appealable judgment and confers jurisdiction upon this court under 28 U.S.C. § 1291. *Experimental Engineering v. United Technologies*, 614 F.2d 1244, (9th Cir. 1980).

■ When the running of the statute is apparent from the face of the complaint, as it is in the present case, then the defense may be raised by a motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980). A dismissal motion should be granted, "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Id.* at 682.

■ Conerly attempts to state a cause of action under § 1981. Since § 1981 does not have its own limitation period, federal courts apply the most appropriate state statute of limitations. *Johnson v. Railway Express Agency*, 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Unless the statute of limitations was tolled, Conerly's complaint far exceeded any potentially applicable California statute of limitations. *See Kirk v. Rockwell International Corp.*, 578 F.2d 814, 820 n. 19 (9th Cir.), *cert. denied*, 439 U.S. 1004, 99 S.Ct. 616, 58 L.Ed.2d 680 (1978); *Griffin v. Pacific Maritime Ass'n*, 478 F.2d 1118, 1119 (9th Cir. 1973). In view of our result on the tolling issue, therefore, we need not decide which statute of limitations is appropriate.

■ Although the principle that federal courts must borrow the state statute of limitations has been firmly established, there has been some confusion, as this author has noted, "whether state or federal law determines . . . whether the statute is tolled." *Jackson v. Hayakawa*, 605 F.2d 1121, 1127 (9th Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980); *see also Briley v. State of California*, 564 F.2d 849, 854, 855 (9th Cir. 1977). The Supreme Court, however, has recently resolved that confusion in favor of the application of state tolling law where not inconsistent with the Constitution or other federal law. *See Board of Regents of the University of the State of New York v. Tomanio*, —— U.S. ——, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980).

■ Conerly argues that the statute should be tolled until his discovery of the Westinghouse seniority lists in July of 1974, and his consequent discovery of an alleged cause of action for employment discrimination. According to Conerly, Westinghouse

fraudulently concealed from him facts giving rise to his cause of action until 1974.

The California statute of limitations for fraud provides for tolling until the aggrieved party discovers the facts constituting the fraud, or through the exercise of reasonable diligence could have discovered the fraud. *Sun 'N Sand, Inc. v. United California Bank*, 21 Cal.3d 671, 582 P.2d 920, 941, 148 Cal.Rptr. 329 (1978). California applies the same principle to claims of fraudulent concealment under the statute of limitations. *E. g., Bowman v. McPheeters*, 176 P.2d 745, 77 Cal.App.2d 795 (1947).

■ Under either California or federal authority, the plaintiff must plead with particularity the facts which give rise to the claim of fraudulent concealment. In *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978), this court stated that the plaintiff "must plead with particularity the circumstances surrounding the concealment and state facts showing his due diligence in trying to uncover the facts. . . ." The *Rutledge* court further required that the plaintiff must allege facts showing "affirmative conduct" on the part of the defendant which would lead a reasonable person to believe that there was no claim for relief. *Id.* California has placed a similarly heavy burden upon the plaintiff in these cases. In *Baker v. Beech Aircraft Corporation*, 39 Cal.App.3d 315, 321, 114 Cal.Rptr. 171, 175 (1974), the California Court of Appeal held that:

"In order to establish fraudulent concealment, the complaint must show: (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of fact sufficient to put him on inquiry. . . . In urging lack of means of obtaining knowledge, it must be shown that in the exercise of reasonable diligence the facts could not have been discovered at an earlier date. . . . 'The existence of such fraud must be alleged clearly and unequivocally and must not rest upon inferences.' (*Bank of America v. Williams*, 89 Cal.App.2d 21, 25, 200 P.2d 151, 154; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading § 783, p. 2398.)"

Consequently, we find no inconsistency between California and federal law pleading on fraudulent concealment and apply the principles of *Baker* to the present case.

Conerly has failed to meet his burden of alleging facts showing due diligence on his part. The second cause of action, set out in the margin,[1] sufficiently alleges both the

---

1. In pertinent part, Conerly's second cause of action reads as follows:

   II

   On or about January 10, 1950, Defendants WESTINGHOUSE ELECTRICAL CORPORATION and INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS represented to Plaintiff that Plaintiff was being laid off pursuant to his seniority status with Defendant WESTINGHOUSE ELECTRIC CORPORATION but failed to reveal and suppressed the fact that there were white employees in plaintiff's division with less seniority who were not laid off. The suppression of these facts was likely to mislead plaintiff and did in fact mislead plaintiff to believe that he was in fact being laid off pursuant to his seniority status with Defendant WESTINGHOUSE ELECTRIC CORPORATION.

   III

   The failure to disclose information and suppression of facts herein alleged to have been made by Defendants WESTINGHOUSE ELECTRIC CORPORATION and INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS were made with the intent to induce plaintiff to believe that the plaintiff was laid off pursuant to his seniority status with Defendant WESTINGHOUSE ELECTRIC CORPORATION.

   IV

   Plaintiff, at the time these failures to disclose and suppression of facts occurred was ignorant of the existence of the facts which Defendants suppressed and failed to disclose.

   V

   Plaintiff in July 1974, discovered for the first time the failures to disclose information and suppression of facts by Defendants WESTINGHOUSE ELECTRIC CORPORATION and INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS. For the first time, the plaintiff gained access to the seniority lists that showed that in Janu-

fraud itself and Conerly's discovery. It does not allege any facts, however, tending to excuse his failure to discover Westinghouse's misconduct for a period of twenty-four years. Upon his return to work, Conerly could have observed whites with less seniority who had remained on the job. Even if he had not made such observations initially, the normal pattern of promotions and pay raises should have alerted him at some point to the fact that whites who were hired after his initial hiring date were advancing more quickly than he in the company. There is simply no allegation as to why Conerly could not have discovered the facts giving rise to his claim in a more timely manner. Because Conerly's complaint, even when read with the required liberality, does not contain sufficient allegations to support the tolling of the statute, his complaint was properly dismissed.

AFFIRMED.

ary 1950, plaintiff was laid off of his job with Defendant WESTINGHOUSE ELECTRIC CORPORATION while white employees with less seniority were not laid off their jobs.