75 F.3d 506
 RICO Bus.Disp.Guide 8997, 96 Cal. Daily Op. Serv. 539,
96 Daily Journal D.A.R. 890
 Tom GRIMMETT, As Trustee for the Bankruptcy Estate of
Vincent Siragusa, Plaintiff,
and
Joanne Siragusa, Plaintiff-Appellant,
v.
Patricia L. BROWN; Patricia L. Brown, Ltd., a Nevada
Corporation; Beckley, Singleton, Delanoy, Jemison
& List, Chartered, a Nevada Corporation,
Defendants-Appellees.
Tom GRIMMETT, As Trustee for the Bankruptcy Estate of
Vincent Siragusa, Plaintiff-Appellant,
v.
Patricia L. BROWN; Patricia L. Brown, Ltd., a Nevada
Corporation; Beckley, Singleton, Delanoy, Jemison
& List, Chartered, a Nevada Corporation,
Defendants-Appellees.
 Nos. 94-16137, 94-16214.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 6, 1995.
Decided Jan. 26, 1996.
 
 David B. Smith, English & Smith, Alexandria, Virginia, and Randall M. Rumph, Shinehouse & Duesing, Las Vegas, Nevada, for plaintiff-appellant Siragusa.
 Erven T. Nelson, Alverson, Taylor, Mortensen & Nelson, Las Vegas, Nevada, for plaintiff-appellant Grimmett.
 Don F. Shreve, Jr., and Peter Angulo, Rawlings, Olson & Cannon, Las Vegas, Nevada, for defendants-appellees Brown.
 George W. Foley, Jr., Pearson and Patton, Las Vegas, Nevada, for defendant-appellee Beckley, Singleton, Delanoy, Jemison & List, Chartered.
 Appeals from the United States District Court for the District of Nevada.
 Before: BROWNING, CANBY, and HALL, Circuit Judges.
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 Joanne Siragusa and Tom Grimmett, the bankruptcy trustee of Joanne's ex-husband Vincent's estate, appeal the district court's dismissal of their civil RICO suit. In their November 1994 suit, Joanne and Grimmett alleged that defendant Patricia Brown masterminded the reorganization of Vincent's medical practices so as to cheat Joanne out of her post-divorce community property interest in those practices. The district court found their suit barred by RICO's four-year statute of limitations. On appeal, Joanne and Grimmett argue: (1) that the district court applied the wrong accrual rule to their RICO cause of action; (2) that it wrongly concluded that their post-November 1990 injuries did not trigger the "separate accrual rule;" (3) that it failed to address whether their RICO cause of action was tolled by Brown's fraudulent concealment; and (4) that it wrongly held that the pendency of the bankruptcy proceeding did not toll the statute or prevent the RICO cause of action from accruing.
 
 
 2
 The district court had jurisdiction over the RICO claim under 18 U.S.C. § 1964(c). We have jurisdiction under 28 U.S.C. § 1291 and affirm.I.
 
 
 3
 Vincent and Joanne Siragusa divorced in 1983. At that time, Vincent owned a one-third interest in a cardiology practice called the Heart Institute of Nevada ("HIN"); Drs. Paul Hareen and John Bowers held the remainder equally.[1] As part of the divorce, Joanne agreed to release her one-half community property interest in Vincent's ownership share in the medical practices in exchange for monthly payments. Joanne perfected a security interest in the practices to protect her in the event that Vincent defaulted. When Vincent defaulted in 1987, Joanne secured a state court judgment for the full amount of her interest. Before she could collect her judgment, however, Vincent filed for bankruptcy and claimed that he no longer owned his interest in the practices.
 
 
 4
 In May 1989, Joanne and Vincent's bankruptcy trustee, Tom Grimmett, filed an adversary complaint in bankruptcy court alleging that Vincent, Dr. Bowers, Dr. Hareen, and HIN's attorney, Patricia Brown, had conspired to cheat Joanne out of her share in Vincent's interest in the practices. Vincent had claimed that he was forced to sell his interest in the medical practices at a loss and become a mere employee when the practices were reorganized into the Cardiology Associates of Nevada ("CAN"). Joanne alleged that because of secret side agreements, Vincent continued to make as much money as he did before; to her, the reorganization amounted to a "common plan to defraud [her] out of her rights under the Divorce Instruments." The alleged scheme also involved the use of backdated documents and false representations to the bankruptcy court.
 
 
 5
 In December 1990, Dr. Hareen told Joanne that he, too, had been defrauded by the reorganization scheme. Although Dr. Hareen was supposed to have received a share of profits under the side agreements, he had not. It was also in 1990 that Dr. Hareen first told Joanne that Patricia Brown (and her law firm, Beckley, Singleton, Delanoy, Jemison & List) had masterminded the scheme.
 
 
 6
 From April 1991 to November 1991, Dr. Bowers sold 37.5% of CAN's stock ownership to CAN's doctor-employees. At that time, Dr. Bowers assured the junior stockholders that Joanne's 1989 bankruptcy complaint exposed CAN to at most $250,000 in liability. Dr. Bowers did not tell the junior stockholders that Joanne also sought to undo the reorganization.
 
 
 7
 In November 1994, Joanne and Grimmett filed a civil RICO action in federal court.[2] They alleged a pattern of racketeering activity having four goals: (1) to acquire and maintain Vincent's medical practice interest by fraud; (2) to acquire and maintain Dr. Hareen's medical practice interest by fraud; (3) to defraud the CAN junior stockholders; and (4) to obstruct justice. They claimed that Brown masterminded the entire scheme.
 
 
 8
 Brown and her law firm moved to dismiss Siragusa's RICO suit as barred by the four-year statute of limitations, claiming that Siragusa knew of the injury to her interest in Vincent's medical practice in May 1989 (when Siragusa filed the bankruptcy court complaint). Brown sought to invoke the "injury discovery" rule, under which a civil RICO cause of action accrues once the injury is reasonably apparent; under this theory, Siragusa's claim would be time-barred. In response, Siragusa claimed that the "injury and pattern discovery" rule applied, and that she did not discover the "pattern" of racketeering activity until December 1990 when Dr. Hareen disclosed the scope of Brown's activities. Siragusa argued in the alternative that she had suffered new injuries since November 1990 which, under the separate accrual rule, allowed her to press her claim. The district court dismissed the suit.
 
 
 9
 Siragusa moved for reconsideration on the ground that the bankruptcy proceeding had equitably tolled her RICO cause of action. She further contended that Brown's fraudulent concealment of the conspiracy tolled the limitations period. The district court addressed only the first argument and denied Siragusa's motion. Siragusa's timely appeal followed.
 
 II.
 
 10
 Siragusa first argues that her civil RICO cause of action did not accrue until December 1990, when she first discovered the "pattern" of Brown's conspiracy; because the statute of limitations for a civil RICO claim is four years, Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987), she claims that her November 1994 action was timely and that the district court erred in dismissing her suit.
 
 
 11
 We review de novo the district court's dismissal on statute of limitations grounds. Washington v. Garrett, 10 F.3d 1421, 1428 (9th Cir.1993). Because the district court has in this case considered evidence outside the pleadings, we treat Brown's motion as one for summary judgment. See Fed.R.Civ.P. 12(c). Thus, we must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995).
 
 
 12
 The elements of a civil RICO claim are simple enough: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to the plaintiff's "business or property." 18 U.S.C. §§ 1964(c), 1962(c); Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 3284-85, 87 L.Ed.2d 346 (1985). In the absence of guidance from the Supreme Court,[3] however, the Courts of Appeals have fashioned no less than three distinct accrual rules for civil RICO claims. The issue of which one to apply is a question of law we review de novo. Mendez v. Ishikawajima-Harima Heavy Indus. Co., 52 F.3d 799, 800 (9th Cir.1995).
 
 
 13
 The first rule, followed by the First, Second, Fourth, Fifth, and Seventh Circuits, is the "injury discovery" rule. This rule was imported from the general federal rule of accrual and has two components. First, the civil RICO limitations period "begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp., 828 F.2d 211, 220 (4th Cir.1987); see Rodriguez v. Banco Cent., 917 F.2d 664, 665-68 (1st Cir.1990); Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1102 (2d Cir.1988), cert. denied, 490 U.S. 1007, 109 S.Ct. 1642, 1643, 104 L.Ed.2d 158 (1989); La Porte Constr. Co. v. Bayshore Nat. Bank, 805 F.2d 1254, 1256 (5th Cir.1986); McCool v. Strata Oil Co., 972 F.2d 1452, 1464-65 (7th Cir.1992). The plaintiff need not discover that the injury is part of a "pattern of racketeering" for the period to begin to run. McCool, 972 F.2d at 1465. The second part of the "injury discovery" rule is the "separate accrual rule," which provides that a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years before. Bankers Trust, 859 F.2d at 1103.
 
 
 14
 The second accrual rule, followed by the Sixth, Eighth, Tenth, and Eleventh Circuits, is the "injury and pattern discovery" rule. Under this rule, the plaintiff must "discover, or be in a position to discover, the existence of a pattern of racketeering activity in addition to the existence ... of the injury." Caproni v. Prudential Securities, Inc., 15 F.3d 614, 619-20 (6th Cir.1994) (emphasis added) (footnote omitted); Granite Falls Bank v. Henrikson, 924 F.2d 150, 154 (8th Cir.1991); Bath v. Bushkin, Gaims, Gaines & Jonas, 913 F.2d 817, 820-21 (10th Cir.1990); Bivens Gardens Office Bldg. v. Barnett Bank, 906 F.2d 1546, 1554 (11th Cir.1990), cert. denied sub nom. Barnett Banks, Inc. v. Konstand, 500 U.S. 910, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991). These Circuits also follow the "separate accrual rule" so that the limitations period begins to run as to each new and independent injury when the plaintiff discovers both the injury and the pattern. Bivens, 906 F.2d at 1554-55.
 
 
 15
 The Third Circuit follows the final rule, the "last predicate act" rule. This rule provides that:
 
 
 16
 [T]he limitations period for a civil RICO claim runs from the date the plaintiff knew or should have known that the elements of a civil RICO cause of action existed, unless, as a part of the same pattern of racketeering activity, there is further injury to the plaintiff or further predicate acts occur which are part of the same pattern. In that case, the accrual period shall run from the time when the plaintiff knew or should have known of the last injury or the last predicate act which is part of the same pattern of racketeering activity. The last predicate act need not have resulted in injury to the plaintiff but must be part of the same "pattern."
 
 
 17
 Keystone Ins. Co. v. Houghton, 863 F.2d 1125, 1126 (3d Cir.1988) (emphasis added).
 
 
 18
 While Siragusa concedes that she knew of her injury--the loss of her interest in Vincent's medical practice--by the time she filed her May 1989 bankruptcy complaint, she claims that she did not learn of Brown's pattern of activity until December 1990, when Dr. Hareen came forward and she learned that Brown's scheme targeted more than one victim. Because, she claims, the Ninth Circuit currently follows the "injury and pattern discovery" rule, she had until December 1994 to bring her civil RICO claim.
 
 
 19
 Unfortunately for Siragusa, we have faithfully followed the "injury discovery" rule for over a decade. See Stitt v. Williams, 919 F.2d 516, 525 (9th Cir.1990) ("The limitations period [for civil RICO actions] begins to run when a plaintiff knows or should know of the injury which is the basis for the action."); Beneficial Standard Life Ins. Co. v. Madariaga, 851 F.2d 271, 275 (9th Cir.1988) (holding that civil RICO claim accrues "when [the plaintiff has] actual or constructive knowledge of the fraud."); Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1415 (9th Cir.1987) ("The limitations period begins to run when a plaintiff knows or should know of the injury which is the basis for the action."); Compton v. Ide, 732 F.2d 1429, 1433 (9th Cir.1984) (reasoning that the general rule for accrual, plaintiff's discovery of the injury, should apply to civil RICO claims). This Circuit has also adopted the separate accrual rule. See, e.g., State Farm Mut. Auto. Ins. Co. v. Ammann, 828 F.2d 4, 5 (9th Cir.1987) (Kennedy, J., concurring).
 
 
 20
 Siragusa nonetheless asks us to reconsider our prior holdings in light of the recent advent of the "injury and pattern discovery" rule, and urges us to adopt this newer rule.[4] She initially points out that RICO should be read broadly, Sedima, 473 U.S. at 497, 105 S.Ct. at 3285, and argues that the "injury and pattern discovery" rule comports with this broad reading.
 
 
 21
 Siragusa then levels three criticisms at the "injury discovery" rule, contending the rule is inconsistent with a broad reading of RICO. First, she claims that this rule has the wrong focus: Instead of focusing on the injury caused by the RICO violation (which requires a pattern), this rule--because it does not require discovery of a pattern--focuses solely on the injury caused by the predicate act. See Granite Falls, 924 F.2d at 154. This argument has merit, however, only if the focus of RICO is on the RICO violation and not on the predicate acts. RICO focuses on the predicate acts. See Sedima, 473 U.S. at 497, 105 S.Ct. at 3285 ("[T]he essence of the [RICO] violation is the commission of those [predicate] acts in connection with the conduct of an enterprise.... Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts.") (emphasis added).
 
 
 22
 Siragusa next contends that the "injury discovery" rule, because it does not require a plaintiff to discover a pattern, is unfair to that plaintiff because it starts the clock ticking before she discovers all the elements of her claim. This argument rests on the assumption that a plaintiff's cause of action should not accrue until she has discovered that all elements exist. This is wrong. See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971) (holding that Clayton Act statute of limitations period begins to run when plaintiff is injured); United States v. Kubrick, 444 U.S. 111, 123, 100 S.Ct. 352, 360, 62 L.Ed.2d 259 (1979) (holding that the Federal Torts Claim Act statute of limitations period begins when a plaintiff discovers his injury and not when he also discovers it was negligently inflicted). Besides, a court wishing to give a plaintiff who knows of her injury time to investigate the pattern can always toll the limitations period. See McCool, 972 F.2d at 1465.
 
 
 23
 Siragusa finally argues that the "injury discovery" rule does not give a plaintiff sufficient time to bring suit. To prove a "pattern," she argues, a plaintiff must show (1) two predicate acts within 10 years of each other; (2) a relationship between those two acts; and (3) a threat of continued activity. See 18 U.S.C. § 1961(5); H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S.Ct. 2893, 2900-01, 106 L.Ed.2d 195 (1989). Although a plaintiff can prove a relationship by showing that the acts "have the same or similar purposes, results, participants, victims, or methods of commission," id. at 240, 109 S.Ct. at 2901 (citing 18 U.S.C. § 3575(e)), continuity cannot usually be proven unless the scheme has been in existence for at least one year. Religious Technology Center v. Wollersheim, 971 F.2d 364, 366-67 (9th Cir.1992). Because the continuity element requires at least one year to mature, she concludes, only three years remain to bring suit. While Siragusa's exposition of the law is correct, it does not advance her argument to favor the "injury and pattern discovery" rule. Because a RICO cause of action cannot accrue until all the elements exist, see McCool, 972 F.2d at 1465, no statute of limitations can begin to tick until a pattern exists, which will not be until continuity exists and the one year usually required to establish continuity has already lapsed. Both accrual rules at issue here require all the elements to exist; neither will begin to tick until the one-year continuity delay has lapsed. Because this one-year delay impacts both rules equally, it favors neither.
 
 
 24
 We do not find Siragusa's criticisms persuasive enough to warrant abandonment of the "injury discovery" rule. Moreover, the "injury discovery" rule encourages diligence in RICO prosecutions and insures that evidence remains fresh. For these reasons, we reaffirm this Circuit's rule that a civil RICO cause of action arises when the plaintiff knows or should know that she has been injured.
 
 
 25
 Under this rule, the dismissal of Siragusa's RICO claim is proper. In her May 1989 complaint in bankruptcy court, Siragusa alleged that a "common plan ... defrauded [her] out of her rights under the Divorce Instrument [i.e., her half of Vincent's medical practice interest]." Given these allegations, it is clear that Siragusa knew in May 1989 that she had suffered injury. Thus, she had until May 1993 to file her claim; because it was filed thereafter, it was properly dismissed.
 
 III.
 
 26
 Siragusa next claims that, even if the injury she discovered in May 1989 is barred by the statute of limitations, she has since suffered other injuries which, under the "separate accrual rule," entitle her to recover for all her injuries.
 
 
 27
 In his concurrence in State Farm Mut. Auto. Ins. Co. v. Ammann, 828 F.2d 4, 5 (9th Cir.1987), then-Judge Kennedy first applied the "separate accrual rule" in the RICO context:
 
 
 28
 The rule is that a cause of action accrues when new overt acts occur within the limitations period, even if a conspiracy was formed and other acts were committed outside the limitations period. A corollary rule is that damages may not be recovered for injuries sustained as a result of acts committed outside the limitations period.
 
 
 29
 Id. (citations omitted). For support, Judge Kennedy drew on Gibson v. United States, 781 F.2d 1334, 1340 (9th Cir.1986), cert. denied, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987) (applying rule and its corollary in a § 1983 conspiracy case) and Hennegan v. Pacifico Creative Service, Inc., 787 F.2d 1299, 1301-02 (9th Cir.), cert. denied, 479 U.S. 886, 107 S.Ct. 279, 93 L.Ed.2d 254 (1986) (applying rule and its corollary in a Sherman Act case and holding that plaintiff, a souvenir store owner, suffered new injury each time the defendant tour company shepherded tourists to its coconspirators, other souvenir shops, to drive the plaintiff out of business).
 
 
 30
 Only a few Ninth Circuit cases offer guidance for a court applying this rule. Prior to Ammann, the court had rarely discussed what constituted a "new" injury. In In re Multidistrict Vehicle Air Pollution, 591 F.2d 68 (9th Cir.), cert. denied sub nom. AMF, Inc. v. General Motors Corp., 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979), the plaintiff, AMF, accused car manufacturers of violating the Clayton Act because they all agreed not to purchase AMF's engine emission control devices. By 1964, every defendant had refused to buy AMF's device. When AMF's 1969 suit was dismissed for exceeding the four-year limitations period, AMF claimed it suffered a new injury because one of the car companies had refused AMF's renewed offer to deal in 1965. The court held that AMF had been excluded from the device market (and injured) in 1964 when the car manufacturers gave their "irrevocable, immutable, permanent, and final" decision; a subsequent refusal did not create a new injury. Id. at 72.
 
 
 31
 In Pace Industries, Inc. v. Three Phoenix Co., 813 F.2d 234 (9th Cir.1987), the Circuit drew on Hennegan and Air Pollution to further define Ammann's "overt act" language. It held that:
 
 
 32
 [T]wo elements characterize an overt act which will restart the statute of limitations: 1) It must be a new and independent act that is not merely a reaffirmation of a previous act; and 2) It must inflict new and accumulating injury on the plaintiff.
 
 
 33
 Pace, 813 F.2d at 238. In Pace, the plaintiff Pace entered into a contract to purchase Wabash's line of multiple disc testers. The contract contained a covenant wherein Pace agreed not to compete with Three Phoenix, the company to which Wabash had sold its line of single disc testers. When Pace disregarded this agreement in 1978 and began to market single disc testers, Three Phoenix sued for injunctive relief in state court; the case was appealed to the Arizona Supreme Court. In 1983, Pace instituted its RICO suit claiming that the Wabash-Pace agreement was part of a scheme between Wabash and Phoenix to keep Pace out of the single disc business, in violation of antitrust law. When Pace's suit was dismissed as untimely, Pace contended that Three Phoenix's filing of appeals within the four year period was an "overt act" designed to further its scheme. We disagreed, holding that Three Phoenix's appeal was not a new and independent act apart from its initial filing of the suit in 1975.
 
 
 34
 Other Circuits also use the "new and independent" language in their "separate accrual" rules, which shed additional light on how this term is interpreted. In Bivens, the defendants were accused of committing three sets of acts: (1) a wrongful takeover of a limited partnership in 1975; (2) the mismanagement and diversion of the partnership's assets from 1975 to 1981; and (3) the sale of the partnership's primary asset, a hotel, at below fair market value in 1981. 906 F.2d at 1549-51. The Eleventh Circuit held that the mismanagement and subsequent sale of the hotel were "new and independent" acts because they "[were] not included among the injuries that naturally flow from the wrongful takeover [in 1975]." Id. at 1551. In Bankers Trust, the corporate defendant was accused of: (1) wrongfully concealing assets during a 1974-76 bankruptcy proceeding; (2) conducting harassing lawsuits in 1978-79 to prevent the plaintiff from vacating the fraudulently attained bankruptcy plan; and (3) fraudulently conveying property in 1981. The court adopted the separate accrual rule and found that the final two injuries were "independent" of the first. Bankers Trust, 859 F.2d at 1102-05.
 
 
 35
 Siragusa's primary injury is the loss of her interest in Vincent's medical practice. Because this injury appears to have been perfected upon the reorganization of the medical practices and the filing of Vincent's bankruptcy petition, it seems to have been concluded by May 1989 at the latest (when Siragusa actually knew of the injury); because that is more than four years before the filing of her November 1994 complaint, that injury would seem to be unreachable under Ammann's corollary rule.
 
 
 36
 Siragusa argues that this particular injury has still not been perfected--because the bankruptcy proceeding aimed at defeating her interest is not yet completed. Even if we assume that this argument has merit (which is doubtful), Siragusa fails to show any "new and independent" act inflicting a "new" injury since November 1990. In her complaint, Siragusa claims that Brown engaged in four sets of post-November 1990 acts that injured her: (1) mail fraud by submitting false documents to the Bankruptcy Court to conceal the fraud; (2) obstruction of justice by concealing documents and falsely testifying in depositions; (3) defrauding Dr. Hareen; and (4) defrauding CAN junior owners by not disclosing CAN's full liability to Siragusa. As to each of these, Siragusa claims that she has been injured due to a loss in her share of the profits from Vincent's medical practice interest.
 
 
 37
 None of the post-November 1990 acts listed above are "new and independent." To begin with, all of them are part of the same corporate reorganization/bankruptcy scheme, and the injuries Siragusa claims are identical to those alleged prior to that time--the loss of her interest in Vincent's practice; neither the acts nor the injuries are new. These injuries are far less independent from one another than were the wrongful takeover and mismanagement of assets in Bivens or the false bankruptcy claim and harassing litigation in Bankers Trust. And although the injury may be different as to the CAN junior owners or even Dr. Hareen, Siragusa cannot claim that their injuries are new injuries to her; a RICO claim only redresses the plaintiff's injuries. See 18 U.S.C. § 1964(c) ("Any person injured in his business or property ... may sue therefor ...") (emphasis added); Pace, 813 F.2d at 238 (holding that the statute of limitations will restart only if plaintiff shows a "new and accumulating injury on the plaintiff ") (emphasis added). Siragusa's post-November 1990 injuries cannot therefore form the basis for a separate cause of action.
 
 IV.
 
 38
 Siragusa argues that the statute of limitations on her RICO cause of action should have been tolled until December 1990, when she first learned that her injuries were part of a pattern of racketeering activity. Until that point, she contends, Brown had perjured herself in depositions and other correspondence to insure that Siragusa never learned of the pattern. Equitable tolling doctrines, including fraudulent concealment, apply in civil RICO cases. Emrich v. Touche Ross & Co., 846 F.2d 1190, 1199 (9th Cir.1988) ("As to the RICO claim ... federal equitable tolling doctrines apply."); see Volk, 816 F.2d at 1415.
 
 
 39
 As an initial matter, Siragusa never pled the allegedly concealed facts in her complaint. Failure to plead these facts waives this tolling defense. See Conerly v. Westinghouse Elec. Corp., 623 F.2d 117, 120 (9th Cir.1980) ("The plaintiff must plead with particularity the circumstances surrounding the fraudulent concealment and state facts showing his due diligence in trying to uncover the facts." (citation and internal quotation omitted)); Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir.1993) (failure to plead facts with particularly requires dismissal).
 
 
 40
 Siragusa's tolling arguments lose on the merits as well. The doctrine of fraudulent concealment is invoked only if the plaintiff both pleads and proves that the defendant actively misled her, and that she had neither actual nor constructive knowledge of the facts constituting his cause of action despite her due diligence. Volk, 816 F.2d at 1415 ("The doctrine [of fraudulent concealment] is properly invoked only if a plaintiff establishes 'affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief.' ") (citation omitted); Rutledge v. Boston Woven Hose & Rubber Co., 576 F.2d 248, 249-50 (9th Cir.1978); Conerly v. Westinghouse Elec. Corp., 623 F.2d 117, 120 (9th Cir.1980); Pocahontas, 828 F.2d at 218-19 (noting that fraudulent concealment "implies conduct more affirmatively directed at deflecting litigation ") (emphasis added).
 
 
 41
 Siragusa's claim fails to demonstrate active concealment. She sets forth no proof of Brown's active concealment of the reorganization scheme; at most, Brown failed to "own up" to her illegal conduct. A failure to "own up" does not constitute active concealment. Pocahontas, 828 F.2d at 218. Furthermore, Siragusa had available all the facts necessary to discover her cause of action with due diligence. The limitations period does not toll simply because a party is ignorant of her cause of action. Volk, 816 F.2d at 1416; Pocahontas, 828 F.2d at 218.
 
 
 42
 Thus, the district court did not err when it failed to consider this meritless argument.
 
 V.
 
 43
 Siragusa argues that Vincent's ongoing bankruptcy proceeding makes her RICO claim timely. She first argues that, even if her RICO cause of action accrued in May 1989, it was automatically tolled by the bankruptcy proceeding. Alternatively, she argues that her RICO action has not yet accrued because she does not yet know her damages.
 
 A.
 
 44
 In her first argument, Siragusa relies on Mt. Hood Stages Inc. v. Greyhound Corp., 616 F.2d 394 (9th Cir.), cert. denied, 449 U.S. 831, 101 S.Ct. 99, 66 L.Ed.2d 36 (1980). In Mt. Hood, the Interstate Commerce Commission (ICC) permitted Greyhound to acquire a number of bus companies whose routes circled Mt. Hood on the condition that Greyhound not interfere with bus routes going through the mountain. Greyhound started to violate the condition, and one of its competitors, Mt. Hood Stages, filed a complaint with the ICC in 1964. When Mt. Hood Stages sued for antitrust violations in 1968, Greyhound moved to dismiss because the four-year limitations period had started to run in 1960. Mt. Hood Stages contended that the ICC proceeding tolled the limitations period, and we agreed. We reasoned that Greyhound would be immune from antitrust liability if its challenged transportation practices were necessary to effectuate the acquisitions approved by the ICC. The necessity of the practices could only be decided by the ICC as an expert body. Thus it was appropriate to toll the running of limitations on the antitrust claim until the ICC had made "a preliminary determination of issues within its primary jurisdiction." Id. at 405.
 
 
 45
 Subsequent cases have read Mt. Hood narrowly and limited its application to cases involving "considerations of federal policy and primary jurisdiction." Pace, 813 F.2d at 241; Community Elec. Serv. v. National Elec. Contractors Ass'n, Inc., 869 F.2d 1235, 1241 (9th Cir.), cert. denied, 493 U.S. 891, 110 S.Ct. 236, 107 L.Ed.2d 187 (1989). In Conley v. International Brotherhood of Elec. Workers, 810 F.2d 913 (9th Cir.1987), the plaintiff filed a petition with the National Labor Relations Board and then brought a court action stating similar claims of unfair labor practices, violations of the Labor-Management Relations Act, and violations of state law. We read Mt. Hood to say that "[e]quitable tolling is most appropriate when the plaintiff is required to avail himself of an alternative course of action as a precondition to filing suit." Id. at 915. In that case, the NLRB suit was merely a "parallel avenue[ ] of relief" to the court action. Id. at 916. Thus, we refused to toll the period while the NLRB had considered the plaintiff's petition. See also Community Electric, 869 F.2d at 1241 (refusing to toll statute of limitations for period in which plaintiff sought relief from NLRB because prior resort to the NLRB "was not a prerequisite to review in federal court"); Pace, 813 F.2d at 240 ("Prior judicial actions, however, 'do not toll the statute of limitations, no matter how close their relationship to the one at bar.' ") (citation omitted).
 
 
 46
 Given this interpretation of Mt. Hood, Siragusa's claim fails. Unlike the ICC's jurisdiction over immunity claims, the primary jurisdiction of the bankruptcy court is not RICO claims. With respect to RICO claims, the bankruptcy court and federal court are more properly considered "parallel avenues of relief." Even if Siragusa could have raised her RICO claim in some form in the bankruptcy proceeding, see In re The Monetary Group, 2 F.3d 1098, 1099 (11th Cir.1993), she could have simultaneously pressed her claim in federal court since the automatic stay did not apply to her claim against Brown, who was not the debtor, see 11 U.S.C. § 362(a); In re Kalispell Feed & Grain Supply, 55 B.R. 627, 629 (Bankr.D.Mont.1985). Thus, the bankruptcy proceeding did not toll her RICO claim.
 
 B.
 
 47
 Siragusa's alternative argument requires more consideration. She argues that the conclusion of the bankruptcy proceeding is a prerequisite to her RICO claim. Because the bankruptcy court may award her all her damages and thereby remove all her injury, she has not yet definitively suffered injury and therefore lacks an element of her RICO cause of action. Thus, she argues, her claim has not yet accrued and could not be barred by the statute of limitations.
 
 
 48
 The seed of this discussion is a 1971 Supreme Court case, Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). In that case, Zenith sued Hazeltine for Sherman and Clayton Act violations arising from Hazeltine's participation in Canadian, English, and Australian patent pools. Zenith sought future damages to its market share due to Hazeltine's wrongful behavior. The Court applied the separate accrual rule to each of Zenith's injuries, and noted that in most cases, future damages could be awarded. It also observed that "it is hornbook law, in antitrust actions as in others, that even if injury and a cause of action have accrued as of a certain date, future damages that might arise from the conduct sued on are unrecoverable if the fact of their accrual is speculative or their amount and nature unprovable." Id. at 339, 91 S.Ct. at 806. The Court concluded that the cause of action for future lost profits would accrue as those damages were incurred: "In antitrust and treble-damages actions, refusal to award future profits as too speculative is equivalent to holding that no cause of action has yet accrued for any but those damages already suffered." Id.
 
 
 49
 A line of cases in the Second Circuit has seized on this language and construed it broadly. In Bankers Trust, the Circuit held that a RICO plaintiff's cause of action had not yet accrued. At the time of the federal suit, the plaintiff was attempting to regain some of the defendant's assets in an ongoing bankruptcy proceeding. The court noted that the plaintiff might recover all his damages in the ongoing bankruptcy proceeding, so that the amount of the plaintiff's damages was speculative. Relying on Zenith, it concluded that his RICO cause of action had not yet accrued. Bankers Trust, 859 F.2d at 1105-06. See also Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158, 1165 (2d Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 385, 126 L.Ed.2d 334 (1993) (holding that a RICO claim had not accrued for a plaintiff who, because he had not collected on judgments awarded in earlier state proceedings, did not know the amount of his damages); First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 768 (2d Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995) ("[A]s a general rule, a cause of action does not accrue under RICO until the amount of damages becomes clear and definite."). Accord Barnett v. Stern, 909 F.2d 973, 977 n. 4 (7th Cir.1990) (in dicta, adopting Bankers Trust rule under facts similar to those in Bankers Trust); Lincoln House, Inc. v. Dupre, 903 F.2d 845, 847-48 (1st Cir.1990) (adopting Bankers Trust rule for federal RICO claim where plaintiff has yet to win or collect judgment on state court action for his injury).
 
 
 50
 Siragusa argues that the facts of this case are nearly identical to those in Bankers Trust: She cannot know the amount of her damages until Vincent's bankruptcy proceeding has finished. If Bankers Trust were the law in the Ninth Circuit, Siragusa would be correct.
 
 
 51
 However, we have interpreted Zenith much more narrowly. In Air Pollution, we noted the limits of the Zenith decision:
 
 
 52
 Zenith did not establish new standards for determining whether damages are ascertainable as of a particular date.... In Bigelow [v. RKO Pictures, Inc., 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652 (1946) ] and Story Parchment Co. [v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931) ], the Court faced the question whether damages were too uncertain for a jury to award damages. It is distinguished [sic] uncertain damage, which prevented recovery, from an uncertain extent of damage, which did not prevent recovery; that is, the failure to establish an injury, from the not uncommon imprecision with regard to its scope.
 
 
 53
 Air Pollution, 591 F.2d at 73; see also Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 650 (9th Cir.1988); Pace, 813 F.2d at 240; Volk, 816 F.2d at 1415 ("Damages recoverable under RICO, therefore, do not affect accrual of the cause of action or commencement of the limitations period."). Thus, "[t]he question of whether there is a right to recovery is not to be confused with the difficulty in ascertaining the scope or extent of the injury." Pace, 813 F.2d at 240. This directly conflicts with the Second Circuit's "clear and definite damages" rule.
 
 
 54
 Precedent aside, we disagree with the Second Circuit's interpretation of Zenith. Zenith dealt with lost future profits, which cannot be calculated until they are incurred--the uncertainty arose because future market conditions, upon which damages depended, had yet to unfold. In Bankers Trust, however, the RICO plaintiff had sustained a definable injury--the uncertainty in that case involved whether and to what extent the known injury would be mitigated by a bankruptcy court. In one, the injury is speculative because it is not known whether it will occur at all; in the other, the injury has occurred and is known, but it is speculative whether the damages might be reduced or even eliminated by alternative recovery efforts. We believe it would be error to equate the two.
 
 
 55
 In this Circuit, Siragusa's claim fails. She knew the value of her injury--the loss of her share of Vincent's medical practice interest--at the time she filed her bankruptcy complaint. That she might have been able to recoup some of those damages in the bankruptcy proceeding did not preclude her from bringing her RICO action. We need not decide here whether subrogation or other devices would apply to prevent double recovery. It is enough to hold, as we do, that under Pace and Volk and Air Pollution and Mir, her RICO claim had accrued at the time she filed her adversary complaint.
 
 VI.
 
 56
 For the foregoing reasons, the district court's dismissal of Siragusa's civil RICO claims is AFFIRMED.
 
 
 
 [1]
 This was not the only organization in which Vincent owned a share. He also owned 33% in the Heart Institute Cath Lab ("HICL") and 27.55% in the Heart Institute Property ("HIP"). These organizations are collectively known as "the medical practices."
 
 
 [2]
 Since both plaintiffs filed identical briefs to this court, both will be hereafter referred to as "Siragusa."
 
 
 [3]
 Malley-Duff did not reach this issue. 483 U.S. at 156-57, 107 S.Ct. at 2767-68
 
 
 [4]
 Siragusa does not argue that the panel should adopt the "last predicate act" rule